Schomaeker, Appellee, v. First National Bank
of Ottawa et al., Appellants.

(No. 80-885—Decided June 3, 1981.)

*Messrs. Recker, Cunningham & Cunningham* and *Mr. Paul H. Cunningham,* for appellee.

*Messrs. Vorys, Sater, Seymour & Pease, Mr. James B. Cushman* and *Mr. Robert E. Leach; Messrs. Unverferth & Unverferth* and *Mr. Thomas A. Unverferth,* for appellant First National Bank of Ottawa.

*Schroeder, Schroeder & O'Malley Co., L.P.A.,* and *Mr. George E. Schroeder,* for appellant village of Ottawa.

CLIFFORD F. BROWN, J.   In order to determine whether the Court of Appeals ruled correctly when it held the order of the planning commission invalid, we consider, seriatim, the power of villages to enact zoning ordinances, the authority granted by the Ottawa Zoning Ordinance, and the effect of the action by the planning commission.

We conclude that the order of the commission effectively granted a use variance, as authorized in the Ottawa Zoning Ordinance, and was not rezoning. We further hold that plaintiff was not entitled to declaratory judgment relief in the common pleas court, because such an action does not lie when a direct appeal to the common pleas court pursuant to R. C. Chapter 2506 is available. In any event, plaintiff was collaterally estopped from raising the propriety of a use variance, given a prior judgment necessarily adjudicating this issue.

To decide the validity of this use variance, we first explore the power of municipalities, such as the village of Ottawa, to enact and enforce zoning ordinances.

Section 3, Article XVIII of the Ohio Constitution, confers upon municipalities "authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations as are not in conflict with general laws." R. C. 713.01 *et seq.* authorize the creation by a village legislative authority of a planning commission empowered to frame zones or districts for that village. Such districts may, among other things, exclude business and trade from residential areas, pursuant to the police power. *Euclid* v. *Ambler Realty Co.* (1926), 272 U. S. 365. Additionally, R. C. 713.11 empowers the village legislative authority to delegate to the planning commission or other administrative board the power to administer the details of the zoning regulations, including "the power***to permit exceptions to and variations from the district regulations in the classes of cases or situations specified in the regulations***."

This broad authorization in R. C. 713.11 to grant variances encompasses both "area" and "use" variances. A use variance permits land uses for purposes other than those permitted in the district as prescribed in the relevant regulation.

An example of a use variance is a commercial use in a residential district. Area variances do not involve uses, but rather structural or lot restrictions. An example of an area variance is relaxation of setback lines or height restrictions. See 82 American Jurisprudence 2d 792-793, Zoning and Planning, Section 256.

Given the broad grant of power in R. C. 713.11 to allow use and area variances, a municipal corporation is not required to delegate to its planning commission the full power authorized by statute. 10 Ohio Jurisprudence 3d 488, Building, Zoning and Land Controls, Section 280. Thus, some municipal ordinances grant the zoning board power to interpret the regulations, but not to grant variances. *Kaufman* v. *Newburgh Heights* (1971), 26 Ohio St. 2d 217. Other municipal ordinances specifically prevent the zoning board from effecting changes in the uses permitted in any district. *State, ex rel. Davis Investment Co.,* v. *Columbus* (1963), 175 Ohio St. 337; *McCloud* v. *Woodmansee* (1956), 165 Ohio St. 271.

The zoning ordinance of the village of Ottawa does not differentiate between use and area variances. Section 402.3 of such ordinance provides in part:

"(a) The Planning Commission shall have the power, upon application, to authorize variances from the provisions and requirements of this Zoning Code which will not be contrary to the public interest or the intent and purpose of this Zoning Code, but only where, owing to special conditions pertaining to a specific piece of property, the strict application of provisions or requirements of this Zoning Code would cause undue or unnecessary hardship."

"* * *

"(c) In modifying the literal interpretation and strict application of the provisions of this Zoning Code and in authorizing a variance therefrom, the Planning Commission may impose such requirements and conditions regarding the location, character and other features of the proposed uses or structures as he may deem necessary in order to carry out the intent and purpose of this Zoning Code, and to safeguard otherwise the public health, safety, convenience and general welfare."

The ordinance in question here clearly indicates a grant of

the power to allow both use and area variances. First, the term variance is used without any modifier. Second, paragraph (c) anticipates the grant of use and area variances, when, in authorizing the imposition of special conditions when granting a variance, it refers to "the proposed uses or structures." Finally, the ordinance establishes guidelines for the grant of variances, again without specifying use or area. These guidelines are considerations inherently applicable to requests either for use or area variances.

Paragraph (b) of Section 402.3 of the Ottawa Zoning Ordinance provides:

"No such variance shall be authorized by the Planning Commission unless the Planning Commission finds that all the following facts and conditions exist:

"(1) Exceptional or extraordinary circumstances or conditions applying to the subject property that do not apply generally to other properties in the same District or Vicinity.

"(2) The special circumstances or conditions do not result from actions of the property owner or any of his predecessors in title.

"(3) Such variance is necessary for the preservation and enjoyment of a substantial property right of the applicant possessed by owners of other properties in the same District or Vicinity.

"(4) The authorization of such variance will not be materially detrimental to the public welfare or injurious to property in the District or Vicinity in which the property is located."

The planning commission found all four of the conditions specified in Section 402.3(b) to exist. These findings are contained in the record of proceedings before the commission. We find that the record supports these findings.

In granting the use variance to the bank, the planning commission was executing and administering the ordinance of its legislative authority, the village council. The granting of the use variance is not inconsistent with the zoning ordinance, since it is expressly authorized therein, given the existence of the stated prerequisite conditions.

Plaintiff-appellee contends that the action of the planning commission constituted the exercise of a legislative function,

that is, rezoning. One of the fundamental principles of zoning establishes that the planning commission "is limited by its properly delegated powers and that it cannot exercise legislative functions so as by the guise of a variance to actually change the law regulating the character and use of property in specified zones. No proposition of zoning law has been better settled by the courts." 3 Yokley, Zoning Law and Practice (4 Ed.), 342, Section 21-9. See, also, *State, ex rel. Synod of Ohio,* v. *Joseph* (1942), 139 Ohio St. 229, 241.

A use variance or exception to permit a commercial owner to extend a parking lot into an adjoining area that is zoned for residential purposes is valid where the zoning agency complies with the zoning ordinance which establishes definite criteria for the variance or exception. A zoning board or planning commission which is given the power to grant variances is vested with a wide discretion with which the courts will not interfere unless that discretion is abused. Whether a hardship or exceptional or extraordinary circumstances exist to justify the issuance of a variance is a question of fact to be determined by the zoning board or commission. *L. & M. Investment Co.* v. *Cutler* (1932), 125 Ohio St. 12; *Bieger* v. *Moreland Hills* (1965), 3 Ohio App. 2d 32; *Mahrt* v. *First Church of Christ, Scientist* (1956), 75 Ohio Law Abs. 24, 142 N.E. 2d 678; *Neithamer* v. *Heyer* (1931), 39 Ohio App. 532; *Upper Leacock Township* v. *Zoning Hearing Board* (1978), 481 Pa. 479, 393 A. 2d 5; 1 Metzenbaum, Law of Zoning and Practice (4 Ed.), 230, 263, 280, 281, 296, Sections 20-2(k), 21-2, 21-5, 21-6; 4 Yokley, *supra,* at 338, Section 25-14.

It is quite apparent that the use variance granted by the planning commission here was precisely what it purported to be. A use variance is intended to permit flexibility in the application of an ordinance to a particular piece of property. The reasoning for delegation of this power to a board of zoning appeals was expressed by this court, as follows:

"***It is now generally recognized by the courts that in the adoption of modern methods of zoning, since they may seriously affect the quality of the owner's title and may jeopardize that absolute freedom in the use of his property which he previously had enjoyed, the owner may be safeguarded from the too severe placing of zoning restrictions upon it. He is fre-

quently given an anchor to the windward which may relieve him from the strict application of a zoning restriction placed upon his property if it should be found that unnecessary hardships would ensue in carrying out the strict letter of the zoning provision***." *L. & M. Investment Co.* v. *Cutler, supra,* at page 19; see 1 Metzenbaum, Law of Zoning, *supra,* at pages 695-696.

Nor is the grant of a use variance an impermissible delegation of legislative power. This court, long ago, pinpointed the critical distinction at issue here:

"The true distinction, therefore, is, between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made." *Cincinnati, W. & Z. R.R. Co.* v. *Commrs. of Clinton County* (1852), 1 Ohio St. 88-9; see Metzenbaum, *supra,* at 694. See, also, *Mobil Oil Corp.* v. *Rocky River* (1974), 38 Ohio St. 2d 23, 31. (Corrigan J., concurring opinion.)

The action of the Ottawa Planning Commission in granting a use variance did not constitute zoning or rezoning, a legislative function. *Forest City Enterprises* v. *Eastlake* (1975), 41 Ohio St. 2d 187; *Gray* v. *Trustees of Monclova Twp.* (1974), 38 Ohio St. 2d 310; *Donnelly* v. *Fairview Park* (1968), 13 Ohio St. 2d 1; *Tuber* v. *Perkins* (1966), 6 Ohio St. 2d 155. It was a valid grant of a use variance, an exercise of administrative or quasi-judicial power.

There is a second reason to uphold the legality of the use variance for Inlot No. 19. The plaintiff-appellee was not entitled to declaratory judgment relief because she failed to exhaust her administrative remedies. Plaintiff did not appeal the granting of the use variance by the planning commission to the common pleas court as provided in R. C. 2506.01; by the village of Ottawa Zoning Ordinance, No. 944, Section 405.2(c), enacted February 23, 1976; and as provided in the planning commission's general rules and regulations passed January 24, 1977, in Sections 1 and 7 thereof.[1]

---

[1] R. C. 2506.01, in relevant part, provides:

"Every final order, adjudication, or decision of any officer, tribunal, authority,

Appellee explains this omission by contending that she was at no time party to the administrative procedure which resulted in the use variance and therefore had no standing to appeal to the common pleas court from the planning commission's order.

The argument that plaintiff had no standing to make an administrative appeal pursuant to R. C. Chapter 2506 in the common pleas court must fail. In an analogous situation this court, in *Roper* v. *Bd. of Zoning Appeals* (1962), 173 Ohio St. 168, held:

"A resident, elector and property owner of a township, who appears before a township Board of Zoning Appeals, is represented by an attorney, opposes and protests the changing of a zoned area from residential to commercial, and advises the board, on the record, that if the decision of the board is adverse to him he intends to appeal from the decision to a court, has a right of appeal to the Common Pleas Court if the appeal is properly and timely made pursuant to Sections 519.15 and 2506.01 to 2506.04, inclusive, and Chapter 2505, Revised Code."

In order to bring an R. C. Chapter 2506 direct appeal of an

---

board, bureau, commission, department or other division of any political subdivision of the state may be reviewed by the common pleas court of the county in which the principal office of the political subdivision is located, as provided in sections 2505.01 to 2505.45, inclusive, of the Revised Code and as such procedure is modified by sections 2506.01 to 2506.04, inclusive, of the Revised Code.

"The appeal provided in sections 2506.01 to 2506.04, inclusive, of the Revised Code is in addition to any other remedy of appeal provided by law."

Ottawa Zoning Ordinance No. 944, Section 405.2(c), provides as follows:

"Rules and regulations. In exercising its powers in hearing appeals the Planning Commission shall adopt from time to time such *general rules and regulations* as it may deem necessary to carry out its functions in hearing appeals."

The planning commission's rules and regulations, passed January 24, 1977, provide in relevant part:

"SECTION 1. Pursuant to Section 405.2 of the Village of Ottawa Zoning Ordinance the Planning Commission hereby adopts general rules and regulations to carry out its functions in hearing appeals.

"* * *

"SECTION 7. * * * The decision of the Planning Commission shall be final and conclusive unless reversed, vacated or modified on appeal to the Court of Common Pleas. Such appeal may be taken either by the party of [*sic* or] the Village Clerk and shall proceed as in the case of appeals in Civil actions as provided by the Revised Code of Ohio, and the Ohio Rule of Civil Procedure."

administrative order, plaintiff must be a person directly affected by the decision of the planning commission. Since the order affected and determined plaintiff's rights as a property owner, and she had previously indicated her interest, both by a prior challenge to the grant of a certificate of occupancy and by her presence with counsel at the hearing on the variance, plaintiff is properly within that class of persons with standing to bring a direct appeal pursuant to R. C. Chapter 2506.[2] See, also, *Duncan* v. *Louisville & Jefferson Co. Planning & Zoning Comm.* (Ky. 1951), 238 S.W. 2d 127; 4 Yokley, Zoning Law & Procedure 183, 186, Section 24-2. The decision of a planning commission granting a use variance is made in a judicial capacity, and the reasonableness of such decision is subject to appeal pursuant to R. C. 2506.01 and 2506.04. *In re Appeal of Clements* (1965), 2 Ohio App. 2d 201; *In re Appeal of McDonald* (1963), 119 Ohio App. 15, 17; *Shaker Coventry Corp.* v. *Bd. of Zoning Appeals* (1962), 115 Ohio App. 472; 2 Ohio Jurisprudence 3d 339, Administrative Law, Section 156.

Given the availability of an R. C. Chapter 2506 direct appeal, a property owner, such as plaintiff, adversely affected by the granting of the use variance to a contiguous property owner may not challenge the granting of such use variance in a declaratory judgment action where such property owner does not assert the invalidity or unconstitutionality of the ordinance. *Gates Mills Investment Co.* v. *Pepper Pike* (1975), 44 Ohio St. 2d 73; *Driscoll* v. *Austintown Assoc.* (1975), 42 Ohio

---

[2] Like the plaintiff in *Roper, supra,* plaintiff Schomaeker was a party to the administrative proceedings before the Ottawa Planning Commission as the following excerpts from the commission's record of proceedings clearly reveal:

"Minutes of Planning Commission meeting held January 16, 1978;***The following is a list of the names and addresses of all abutting property owners to lot Number 19, Village of Ottawa, Ohio, as they appear in the office of the Auditor of Putnam County.

"Lot # 20 Eileen Schomaeker, 410 E. Third, Ottawa, Ohio***
"***

"The following notice was published in the Putnam County Sentinel December 28, 1977 and sent to the following:

"Eileen Schomaeker, 410 E. Third St., Ottawa, Ohio 45875.
"***

"Mr. Paul Cunningham, Attorney, appeared on behalf of Eileen Schomaeker and presented a petition containing 68 signatures objecting to the variance. Numerous persons testified or spoke both for and against the issue."

St. 2d 263, paragraphs one and four of the syllabus; *Standard Oil Co.* v. *Warrensville Hts.* (1976), 48 Ohio App. 2d 1.

Plaintiff in the present declaratory judgment action does not attack the validity or constitutionality of the Ottawa Zoning Ordinance in any respect, but seeks relief essentially on the basis that the granting of the use variance was against the weight of the evidence and contrary to law. One of the issues which emerged was whether the planning commission granted a use variance or legislatively rezoned Inlot No. 19. This falls far short of attacking the validity or constitutionality of the zoning ordinance.

A third reason the bank should prevail is that in prior litigation brought by the plaintiff in this matter (case No. 77-104, Court of Common Pleas of Putnam County), the trial court on November 25, 1977, enjoined defendant bank from developing Inlot No. 19 as a parking lot as follows:

"***Plaintiff is entitled to an injunction which enjoins Defendant from constructing a parking lot on the parcel of ground in question [Inlot No. 19] until it obtains a valid variance from the Planning Commission of the Village of Ottawa, Ohio. To be valid, this commission must find that the conditions required by Section 402.3 of the ordinance exist."

The judicial determination that the grant of a use variance by the planning commission, upon a finding that the specified conditions exist, would allow the bank to construct its parking lot collaterally estops further litigation of the issue. The doctrine of *res judicata* involves two basic concepts. *Whitehead* v. *Genl. Tel. Co.* (1969), 20 Ohio St. 2d 108, 112. First it refers to the effect a judgment in a prior action has in a second action between the same parties based upon the same cause of action. The second aspect is "collateral estoppel" which precludes the relitigation, in a second action, *of an issue* actually and necessarily litigated and determined in a prior action based on a different cause of action where all the parties in the first action are parties in the second action. Although the cause of action differs, the prior judgment precludes relitigating the same issue in the second suit. *State, ex rel. Ohio Water Service Co.,* v. *Sanitary Sanitation Dist.* (1959), 169 Ohio St. 31; *Norwood* v. *McDonald* (1943), 142 Ohio St. 299; Restatement of Judgments, 175, Section 45, comment (c), and Section 68 (2); 32 Ohio Jurisprudence 2d 438, Judgments, Section 229.

Such is the case here. The prior decision of the Putnam County common pleas court was never appealed.[3] Thereafter, the bank did obtain, as ordered, the use variance in question. The planning commission in effect, did find, as ordered, "that the conditions required by Section 402.3 of the ordinance exist."[4] Under the principle of *res judicata* this use variance cannot now be collaterally attacked in a declaratory judgment action. 32 Ohio Jurisprudence 2d 409, 413, Judgments, Sections 205 and 209.

Accordingly, the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

CELEBREZZE, C. J., COOK, P. BROWN, SWEENEY and HOLMES, JJ., concur.

LOCHER, J., dissents.

COOK, J., of the Eleventh Appellate District, sitting for W. BROWN, J.

LOCHER, J., dissenting. Appellee alleges that the village of Ottawa planning commission (planning commission) erred when it granted a variance to the First National Bank of Ottawa (bank). I agree with this contention.

The majority fails to address this issue and asserts that the procedural context in which this case arose precludes such a review by this court. Rather, a careful examination of the procedural history *compels* a thorough review of the facts in light

---

[3] The validity of the use variance was necessarily determined in this prior proceeding, the injunction action in case No. 77-104, Court of Common Pleas of Putnam County.

[4] To evidence fulfillment of the common pleas court order in case No. 77-104 that the bank is enjoined from constructing a parking lot "until it obtains a valid variance from the Planning Commission***," the common pleas court in the later declaratory judgment action, case No. 78-33, found, *inter alia,* in its judgment entry:

"***that under the Code the variance sought*** did not rezone said lot; that said hearing and decision subsequently rendered by the Planning Commission were authorized by and in conformity with the general purpose of the zoning ordinance.

"The Court also finds that the conditions and provisions of the Zoning Code have been complied with;***Bank has complied with the order of this Court in case No. 77-104 ordering it to obtain a valid variance before it be permitted to construct a parking lot Inlot 19."

of the law upon which the planning commission of the village of Ottawa was required to base its decision in this case.

In the original injunction action (case No. 77-104), the Court of Common Pleas specifically found that, if the bank constructed a parking lot as planned, appellee would be damaged. Accordingly, the court enjoined the bank "from constructing a parking lot***until the***[bank] obtains a valid Variance permitting said parking lot, by virtue of the actions of the Planning Commission of the Village of Ottawa."

After the planning commission granted the variance, appellee filed a complaint for declaratory relief against both appellants in the Court of Common Pleas (case No. 78-33). This complaint requested the court to declare that the variance was invalid and that the injunction issued in case No. 77-104 was still in effect.

In the majority opinion, this court erroneously holds that appellee could only seek review of this decision through a proceeding conforming with R. C. Chapter 2506. This approach ignores the real issue presented. Appellee's complaint for declaratory relief in case No. 78-33 did *not* seek appellate review of the planning commission's decision. Rather, appellee requested a determination as to whether the injunction issued in case No. 77-104 remained in effect and whether the bank had indeed secured a *valid* variance.

## I.

It is important to consider the policy underlying declaratory judgments in order to determine whether a complaint for declaratory relief is appropriate. "A primary purpose of the declaratory judgment action is to serve the useful end of disposing of uncertain or disputed obligations quickly and conclusively." *Ohio Farmers Indemnity Co.* v. *Chames* (1959), 170 Ohio St. 209, 213. R. C. 2721.02, therefore, provides: "Courts of record may declare rights, status, and other legal relations whether or not further relief is or could be claimed.***"

The *legal relation* in question in this case is that of parties to a judicial decree by a court in equity. The legal issue in question is whether the injunction issued in case No. 77-104 is still in effect. The attendant question of law and fact is whether the

bank has performed in accordance with that injunction and secured a *valid* variance. If the bank has not performed, the legal relation created by the injunction issued in case No. 77-104 continues.

Appellants and the majority of this court ignore the procedural context and characterize this case as one controlled by the holding in *Driscoll* v. *Austintown Associates* (1975), 42 Ohio St. 2d 263. Likewise, the majority relies upon *Driscoll* as authority for holding that a declaratory judgment action is not appropriate.[5]

*Driscoll* is not controlling because this case is not an appeal from an administrative decision. Given the facts and procedural history of this case, *Driscoll* is a weak reed which fails to support the majority's position.

Indeed, there appears to be no procedure other than declaratory judgment through which a party could determine whether a judicial decree remains in effect. It is ludicrous to suggest, as appellant village of Ottawa has, that appellee should be denied declaratory relief in case No. 78-33 because she failed to appeal case No. 77-104. The trial court, in case No. 77-104, granted appellee the relief which she requested. When the planning commission issued a variance, the appeal

---

[5] Rather, *Driscoll* presents a different procedural sequence than this case does. In *Driscoll*, the *first* step was a county planning commission review of a *rezoning* application which was approved by a township board of trustees; *then*, a complaint was filed seeking a declaratory judgment and equitable relief as well as alleging that the rezoning was an unconstitutional taking of property; and, *finally*, years later, a complaint for an injunction seeking to nullify the declaratory judgment and injunction decree described above was filed and ultimately appealed to this court. This court held that, in cases dealing with the application of zoning ordinances, declaratory judgment is appropriate as a means of obtaining relief only when the validity or constitutionality of the ordinance is in issue. In all other circumstances, parties are required to *appeal* in accordance with R. C. Chapter 2506, appeals from orders of administrative officers, and agencies. The issue of whether a declaratory judgment action is appropriate to determine the legal relation of parties to a *prior* judicial decree was not before this court.

The only other case from this court which the majority cites for this proposition is *Gates Mills Investment Co.* v. *Pepper Pike* (1975), 44 Ohio St. 2d 73. In a *per curiam* opinion which quoted the entire syllabus of *Driscoll, supra,* the court, in *Gates Mills,* merely held that the Court of Common Pleas, in an action for declaratory relief, had jurisdiction of the subject matter to determine whether an ordinance is applicable to a particular parcel of property and whether that ordinance is unconstitutional either as written or as applied. Obviously, the case now before the court presents different issues.

time in case No. 77-104 had run; but, prior to the issuance of a variance, it would be impossible to determine whether it was valid.

Rather than dismiss appellee's request for declaratory relief, the Court of Common Pleas, in case No. 78-33, exercised its discretion and entertained the action as appellee had framed it. See *Schaefer* v. *First National Bank of Findlay* (1938), 134 Ohio St. 511. "Following such determination appropriate appellate procedures are available to the parties." *State, ex rel. Dickison,* v. *Court of Common Pleas* (1971), 28 Ohio St. 2d 179, 180.

In this case, therefore, declaratory judgment serves to determine expeditiously what relationship exists between the two parties to the injunction in case No. 77-104. Unless the trial court abused its discretion by entertaining the request for declaratory relief, it is the duty of this court to determine whether the Court of Appeals was correct in reversing the Court of Common Pleas and reaffirming the effect of the injunction issued in case No. 77-104. Cf. *Agricultural Ins. Co.* v. *Constantine* (1944), 144 Ohio St. 275, 284.

## II.

Section 402.3 of Ottawa Zoning Ordinance No. 944 (Section 402.3), quoted in the majority opinion, properly requires that the planning commission may grant variances from the zoning plan only when *unnecessary hardship exists.* The purpose of the proposed parking lot was to provide additional off-street parking for bank employees. The record in case No. 78-33 is clear, however, that several other lots in the area which were already zoned for business use would have served the same purpose. It is difficult, therefore, to envision how denying this variance would create an *unnecessary hardship* for the bank.

In addition to the *unnecessary hardship* criterion, Section 402.3(b), quoted by the majority, *supra,* imposes four additional standards, each of which must be met before the planning commission may issue a variance. Applying these standards to the facts of this case yields the following conclusions: (1) in light of the discussion above regarding *unnecessary hardship,* it is difficult to imagine how any *"exceptional or*

*extraordinary circumstances or conditions"* exist; (2) likewise, this variance may not be *"necessary for the preservation and enjoyment of a substantial property right";* (3) the only "circumstance" which exists is a need, perceived by the bank, for off-street employee and customer parking; yet, this is caused *solely* by the bank, the current property owner, as no third party has intervened to create this "need"; and finally (4) the trial court, in case No. 77-104, specifically found that appellee would indeed be damaged if the bank received the variance which it requested.

Perhaps, the most persuasive critique of the decision by the planning commission is the dissenting opinion of Judge Whiteside of the Court of Appeals. Although Judge Whiteside disagreed with the majority's holding that the action of the planning commission was rezoning, he observed that "[t]he evidence in the record in this case raises some question as to the propriety of the factual findings of the Planning Commission." Judge Whiteside's dissenting opinion, therefore, suggests that a review of the findings of the planning commission would have led to a conclusion that the record did *not* support these findings. The majority of this court, without elaboration, has found otherwise. Even if one assumes that the Court of Appeals erred in holding that the action by the planning commission was tantamount to rezoning, this court has a duty to affirm the Court of Appeals when its *decision* is correct. See *Agricultural Ins. Co.* v. *Constantine, supra.*

This court, therefore, must thoroughly review the basis of the decisions made by the lower courts. Having done so, I would affirm the decision of the Court of Appeals. I would specifically hold that, because the bank failed to get a *valid* variance within the requirements of the ordinances of the village, the injunction issued in case No. 77-104 remains in effect. This case should, therefore, be remanded to the Court of Common Pleas for an entry consistent with this opinion.