OPINION
The relevant facts of this case are as follows. On April 24, 1995, the First Church of God in Toledo, Ohio, submitted an application for a special use permit regarding a building, located in an R-4 zoning district, which the church owned at 436 W. Delaware Avenue in the Old West End neighborhood of Toledo. The church and the Cherry Street Mission sought the special use permit for an emergency shelter facility for homeless women, known as the Sparrow's Nest, which housed fourteen beds and provided showers, meals, clothing and safety for women, along with social service referrals and rehabilitative help. The application was heard before the Toledo City Plan Commission on August 10, 1995. Prior to the hearing, the Commission Staff recommended that the permit be denied because the location did not conform to the group home spacing requirements set forth section 1117.01(i)(8) of the Toledo Municipal Code ("TMC") and because the Old West End neighborhood had already far exceeded its quota for group homes and similar facilities. Nevertheless, at the hearing, the issue was raised as to whether the Sparrow's Nest truly fell within the TMC's definition of a group home. Accordingly, the Commission Board recommended that the issue be submitted to the City Law Department for guidance and deferred the application to its October 12, 1995 meeting.
On October 4, 1995, the City Law Department submitted a memorandum to the Commission setting forth its opinion on the issue. The law department opined that a homeless shelter for women, by definition, did not meet the standards and requirements of a group home special use classification set forth in TMC section 1167.01(b)(21). That is, the Sparrow's Nest is not a "State licensed or certified home for residence care of children or developmentally disabled persons which is owned and/or operated by a public agency, a private community chest funded agency, an established private single-family home or a home established by a nonprofit corporation, into which placement of such persons is made by a public agency and/or which is supervised by such agency with respect to licensing and regulations and standards of operation, program and personnel." As an alternative, the law department suggested that the Commission consider reviewing the application as one for a hospital or institution special use classification. Section 1103.26 of the TMC defines an institution as a "building occupied by a non-profit corporation or a non-profit establishment for public use." The law department noted, however, that in order to utilize this special use, the Commission would have to waive the provision in TMC section 1167.01(b)(7) which requires that the institution be located on a "site of not less than five acres * * *."
On November 9, 1995, the application was again heard before the Commission Board. At this hearing, the Commission Staff recommended that the Commission waive the five acre site requirement of TMC section 1167.01(b)(7) and approve the application of the Sparrow's Nest for a special use permit as a hospital or institution. At that hearing, Brian Prosek, attorney for the applicant, Gary Taylor of the City Law Department, and Don Andrews, the Executive Director of the Cherry Street Mission, spoke in support of granting the permit. Denis Magee, a member of the Board of Directors of Toledo Old Towne Community Organization spoke in opposition to the permit. In addition, the Commission considered a letter from plaintiff-appellant, David Neuendorff, who opposed the granting of a special use permit for the Sparrow's Nest as a group home or similar facility. At the conclusion of the hearing, the Commission voted to approve the staff recommendation. Thereafter, on December 5, 1995, the Toledo City Council passed Ordinance No. 753-95,
 "Granting a Special Use Permit for an emergency shelter for women at 436 W. Delaware Avenue, Toledo, Ohio; subject to certain conditions; and declaring an emergency."
The Ordinance then expressly waived the minimum five acre site requirement in TMC section 1167.01(b)(7).
On December 29, 1995, plaintiffs-appellants, Women of the Old West End, Inc. ("WOWE") and David Neuendorff, filed a notice of appeal with the Lucas County Court of Common Pleas (case No. 95-3687), pursuant to R.C. Chapters 2505 and 2506, appealing the passage of Ordinance No. 753-95 and naming the city of Toledo as appellee. In their subsequently filed brief, appellants asserted that the Toledo City Council erroneously granted the special use permit for several reasons. Appellants argued that the TMC does not recognize emergency shelters (which the applicant defined the Sparrow's Nest to be) as permissible uses in an R-4 zoning district, that the Sparrow's Nest most closely resembled a "group home" or "similar facility" thereby triggering the TMC saturation requirements, and that even if the Sparrow's Nest could be defined as an "institution," the five acre parcel size requirement could not be waived.
On April 3, 1996, WOWE and Neuendorff filed a complaint in mandamus, for declaratory judgment and for injunctive relief in the lower court against the Toledo City Plan Commission and the city of Toledo (case No. 96-1073). Appellants alleged that the Commission unlawfully failed, neglected and/or refused to apply the obligatory criteria of TMC sections 1117.01(i)(9), 1123.01(J) and 1167.02(b), and others, in granting the special use permit and site waiver, that appellees knew or should have known of the oversaturation of group homes, similar facilities and/or residential support facilities within the Old West End planning district when it granted the permit and that appellees have routinely failed, refused and/or neglected to apply the obligatory criteria of the TMC for a period of at least ten years. The complaint further alleged that appellees' historic practice of granting special use permits for group homes, similar facilities and/or residential support facilities in violation of the TMC have caused damage and loss to the value of Neuendorff's and WOWE members' property within the Old West End planning district. Appellants then demanded a judgment declaring that appellees had violated provisions of the TMC in the historic granting of special use permits, an injunction requiring appellees to follow and apply the applicable provisions of the TMC in considering and granting any future special use permits, and the issuance of a writ of mandamus permanently enjoining appellees from failing to follow and apply provisions of the TMC in considering and granting any future special use permits.
On May 16, 1996, appellees filed a motion to consolidate and motion for summary judgment in both cases. As to the administrative appeal, appellees claimed that appellants lacked standing to bring an R.C. Chapter 2506 appeal and that the TMC allows for the granting of the special use permit at issue. With regard to the original complaint, appellees argued that appellants did not meet the legal standards for relief under the three theories claimed. On May 7, 1997, the lower court filed an opinion and judgment entry in both cases. As a preliminary matter, the court denied the motions to consolidate for purposes of clarity of the issues. In the administrative appeal, the court held that WOWE did not have standing to bring the R.C. Chapter 2506 appeal but that Neuendorff, as a property owner who appeared either in person or in writing during the administrative process and whose rights as a property owner were affected by the passage of Ordinance No. 753-95, did have such standing. The court then determined that there was substantial, reliable, probative evidence for the Toledo City Council to conclude that the Sparrow's Nest was not a group home but more closely fit the TMC description of an institution. Accordingly, the court dismissed WOWE as a party to the appeal, granted summary judgment in favor of the city of Toledo, and affirmed the city's grant of the special use permit.
The trial court's decision in case No. 96-1073 was consistent with its decision in the administrative appeal. Regarding the petition for a writ of mandamus, the court found that appellants failed to establish that they had a clear legal right to the relief requested or that appellees had a clear legal duty to perform the requested act. As to the request for injunctive relief, the court found that as a result of the court's ruling in the administrative appeal, appellants could not establish their right to injunctive relief. Finally, with regard to appellants' request that the court declare that appellees have historically violated provisions of the TMC in granting special use permits, the court held that such was an inappropriate request in that the previous individual cases were not properly before the court. Accordingly, the court granted appellees' summary judgment in all respects.
Appellants now appeal from the judgments of the trial court and raise the following assignments of error:
"Assignment of Error No. 1:
 It was unreasonable, arbitrary and against the manifest weight of the evidence for the trial court to not require enforcement of the group home/similar facility antisaturation ordinance to the Sparrow's Nest.
"Assignment of Error No. 2:
 It was error for the trial court to not find and declare on the merits that the City had violated its zoning code and to issue an injunction.
"Assignment of Error No. 3:
 The trial court erred in denying Appellants declaratory relief because of unappealed historic violations of the special use permit and group home antisaturation ordinance.
"Assignment of Error No. 4:
 Where petitioners for mandamus relief demonstrate a clear legal right to relief, the petition may not be denied to them on that basis.
"Assignment of Error No. 5:
 A nonprofit organization has standing to pursue a Chapter 2506 administrative appeal."
The first and fifth assignments of error challenge the trial court's ruling in the administrative appeal. In their fifth assignment of error, appellants assert that the trial court erred in holding that WOWE did not have standing to pursue an administrative appeal under R.C. Chapter 2506.
R.C. 2506.01 grants appeal rights from decisions of any agency of any political subdivision, and provides in relevant part:
 "A `final order, adjudication, or decision' means an order, adjudication, or decision that determines rights, duties, privileges, benefits, or legal relationships of a person * * *."
The Supreme Court of Ohio has consistently held that the class of persons entitled to appeal under R.C. Chapter 2506 is limited to those persons directly affected by the administrative decision.Schomaeker v. First Nat'l Bank (1981), 66 Ohio St.2d 304, paragraph two of the syllabus. See, also, Roper v. Bd. of ZoningAppeals (1962), 173 Ohio St. 168, syllabus. Accordingly, while a nonprofit corporation or unincorporated association has standing to file an action for declaratory judgment or injunctive relief on behalf of its members who have standing to sue individually, "[t]he right to appeal [pursuant to R.C. 2506.01] exists only where expressly conferred by statute. There is nothing in R.C. Chapter 2506 or 2505 in any way suggesting that an appeal may be brought on behalf of a person entitled to appeal by a voluntary association of which he is a member." Northern Woods Civic Assn.v. Columbus Graphics Comm. (1986), 31 Ohio App.3d 46, 47.
Accordingly, WOWE did not have standing to bring an administrative appeal on behalf of its members and the fifth assignment of error is not well-taken. The first assignment of error will therefore only be addressed with respect to appellant Neuendorff.
In his first assignment of error, appellant contends that the trial court's affirmance of Ordinance No. 753-95 was illegal, unreasonable, arbitrary and against the manifest weight of the evidence.
R.C. 2506.01 provides that "[e]very final order, adjudication, or decision of * * * any political subdivision of the state may be reviewed by the court of common pleas * * *." R.C.2506.04 then sets forth the common pleas court's standard of review. The standard is "hybrid" because R.C. 2506.04 directs the court of common pleas to resolve both questions of law and questions of fact. Harvey v. Cincinnati Civil Serv. Comm. (1985),27 Ohio App.3d 304, 306. Under R.C. 2506.04, "[t]he court applies the law to the evidence that was presented to the administrative agency, but acts as a finder of fact in regard to the new evidence; then, reviewing the entire record, the [common pleas] court determines whether the agency's decision was `unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable and probative evidence.' R.C. 2506.04." Id.
Our standard of review on appeal in this case is limited by R.C. 2506.04 which provides that only questions of law may be appealed to this court. Therefore, the judgment of the lower court will be affirmed unless we find, "* * * as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence."Kisil v. Sandusky (1984), 12 Ohio St.3d 30, 34.
Appellant asserts that the Sparrow's Nest is a group home or similar facility pursuant to the TMC and therefore should have been treated as such by the Toledo City Council. Section 1167.01(b) of the TMC sets forth special uses of land which the city council has the authority to permit by ordinance. One such special use is a group home as provided in TMC section 1167.01(b)(21):
 "Group homes of the type or types hereinafter specified where not otherwise permitted. All types of group homes under this section shall be State licensed or authorized homes operated by a public agency, a private community chest agency, a non-profit institution when operated under the supervision of a public agency, or a privately operated home which is operated for the Ohio Division of Mental Retardation. All group homes shall maintain not less than the minimum standards of the State law and regulations and any additional requirements under this section. The number of group homes and quasi-residential nonconforming uses in an identifiable neighborhood and any other factors which may bear on the need for extra protection to the neighborhood to help achieve and/or maintain orderly land use and stability, shall be taken into account in determining proper locations for group homes. `Group home' means a State licensed or certified home for residence care of children or developmentally disabled persons which is owned and/or operated by a public agency, a private community chest funded agency, an established private single-family home or a home established by a nonprofit corporation, into which placement of such persons is made by a public agency and/or which is supervised by such agency with respect to licensing and regulations and standards of operation, program and personnel."
Regarding the distribution of group homes within any one planning community, TMC section 1117.01(i)(9) provides in relevant part:
 "The maximum number of group homes and similar facilities permitted within any one planning community, including pre-existing group homes, halfway houses providing a rehabilitation program for persons reentering society upon discharge from a mental hygiene institution, for persons with drug or alcohol problems, for persons on probation or parole for criminal offenses and nursing homes in residential districts, shall be one-fourth of one percent of the occupied single-family dwelling units within the planning community."
Appellants assert that the Sparrow's Nest, a homeless shelter for women, fits within the description of "group home" or "similar facility," that the number of group homes or similar facilities in the Old West End neighborhood already exceeds the saturation level, and that the trial court erred in upholding the ordinance. The Toledo City Council, however, treated the Sparrow's Nest as an institution. TMC section 1167.01(b)(7) permits the City Council to grant a special use permit for a:
 "(7) Hospital or institution, provided that any hospital or institution authorized in any R-A, R-B, R-1, R-2, R-3, R-4 or R-4A District shall be located on a site of not less than five acres, shall not occupy more than twenty percent of the total lot area and shall be set back from all yard lines at least two feet for each foot of building height."
An institution is defined by TMC section 1103.26 as "* * * a building occupied by a non-profit corporation or a non-profit establishment for public use."
The record before the lower court establishes that the Sparrow's Nest is clearly not a group home. Nor is it a similar facility as that term is used in TMC section 1117.01(i)(9). As a homeless shelter for women that offers beds, meals, showers and such on a daily basis, the Sparrow's Nest most closely fits the TMC's definition of an institution. Appellants further assert, however, that the City Council did not have the authority to grant a waiver of the five-acre parcel requirement. In granting a special use permit, the governmental body issuing the permit is restricted by the terms and conditions that are imposed by the zoning resolution. Valley Auto Lease of Chagrin Falls, Inc. v.Auburn Twp. Bd. of Zoning Appeals (1988), 38 Ohio St.3d 184, 186. Where the governmental body issues a permit that is not authorized by the zoning resolution, the body illegally changes the law regulating the character and use of property in specified zones.Schomaeker, supra, at 309. TMC section 1167.01(b), which grants the Toledo City Council the authority to issue special use permits, provides:
 "Council shall have authority to permit by ordinance the following uses of land or structures in any district, except as herein qualified, and subject to the conditions and procedures set forth herein[.]" (Emphasis added.)
With regard to the issuance of a special use permit for an institution, the TMC section 1167.01(b)(7) requires that such institution be located on a site of not less than five acres, that it not occupy more than twenty percent of the total lot area, and that it be set back from all yard lines by at least two feet for each foot of building height. The TMC only allows the City Council to grant a special use permit subject to these requirements and there is nothing in the TMC which permits the Toledo City Council to waive any of the requirements. Rather, TMC section 1167.02, regarding the procedures to be followed in applications for special use permits, reads in relevant part:
 "(c) The Plan Commission may recommend and Council may provide conditions or restrictions upon the construction, location and operation of a special use, as shall be deemed necessary to secure the general objectives of this Zoning Ordinance and to reduce injury to the value of property in the neighborhood.
 "Any proposed special use shall otherwise comply with all the requirements set forth in this chapter for the district in which such use is located, except that Council may permit hospitals and institutions to exceed the height limitations of such district."
That is, the modifications that City Council may make in granting a special use permit for an institution are spelled out in the TMC and do not include waivers of the five acre site requirement.
Accordingly, Ordinance No. 753-95 was illegal and the lower court erred as a matter of law in affirming the decision of the Toledo City Council to grant the special use permit. The first assignment of error is therefore well-taken.
Given our ruling on the second assignment of error, we do not need to address the second, third, and fourth assignments of error which challenge the lower court's ruling in case No. 96-1073 and therefore find them moot.
On consideration whereof, the court finds that substantial justice has not been done the party complaining and the judgment of the Lucas County Court of Common Pleas in case No. 95-3687 is reversed. Court costs of this appeal are assessed to appellees.
JUDGMENT REVERSED.
 Peter M. Handwork, P.J.
 George M. Glasser, J.
 Richard W. Knepper, J.
CONCUR.