{¶ 1} Appellant CC Realty (hereinafter referred to as "Halleen") appeals the trial court's decision that affirmed the North Olmsted Zoning Board of Appeal's ("BZA") denial of Halleen's variance request. Halleen assigns the following errors for our review:
 "I. The trial court erred by failing to find that the City of North Olmsted Board of Zoning Appeals' final decision resulted in an unconstitutional administrative taking in violation of the Fifth and Fourteenth Amendments of the United States Constitution, and Article I, § 19 of the Ohio Constitution."
 "II. The trial court abused its discretion and erred as a matter of law by considering evidence that was not part of the whole record before the North Olmsted Board of Zoning Appeals."
 "III. The trial court erred in affirming the City of North Olmsted Board of Zoning Appeal's finding that the denial of the proposed variance did not create an unnecessary hardship on the plaintiff."
 {¶ 2} Having reviewed the record and pertinent law, we affirm the decision of the trial court. The apposite facts follow.
 {¶ 3} The property at issue is located in North Olmsted at the intersection of Lorain Road and East Park Drive. It is part of several parcels that were consolidated to form the Halleen Chevrolet automobile dealership.
 {¶ 4} In 1979, Carl Halleen's uncle, Charles Halleen, consolidated three separate parcels (232-08-005, 232-08-007, and 232-08-004) at this site to form one *Page 4 
parcel. The consolidated parcels were collectively renumbered as 232-08-004. Two of the three parcels were zoned for commercial and retail use. However, one of the parcels remained zoned as residential, which created a single, split-zoned parcel with frontage on Lorain Road and East Park Drive. It is this residentially zoned portion of the consolidated plot that is the subject of this appeal.
 {¶ 5} The back portion was originally configured as a bowling alley lot, which was long and narrow. All of the residential lots in this area are similarly configured. A house sits on the front of the property facing East Park Drive. In 1979, appellant's uncle sold the property to Adele Duffy, who, to this date, resides on the property. Duffy's intention was to purchase the entire parcel; however, she learned that Charles Halleen had changed the terms of the purchase and sold her only the front portion of the parcel. He retained ownership of the back portion.
 {¶ 6} The back portion borders Duffy's property to the west and a residential neighborhood to the north and east. The southern portion of the property borders the dealership.
 {¶ 7} The 1979 BZA minutes reflect that the BZA agreed to the uncle's split of the residential parcel and the consolidation of the three parcels based on his assurance that the back portion of the consolidated lot would remain residential to act as a buffer between the expanding dealership and the residential neighborhood. *Page 5 
 {¶ 8} Appellant Carl Halleen could not recall the exact date he purchased the dealership from his uncle, but thought it was sometime during the 1980's. Halleen claims he was not sure whether he had knowledge that the back lot was zoned residential when he purchased the dealership from his uncle.
 {¶ 9} In 1993, Halleen attempted to consolidate two more parcels fronting Lorain Road into the parcel that had been consolidated in 1979. The board permitted the consolidation contingent on Halleen placing a restrictive covenant on the back residential portion of the consolidated lot to assure the residential neighbors would be buffered from the expanding dealership. At the 2005 BZA meeting, it was revealed that the restrictive covenant was not placed on the property. It is unclear based on the record, if the consolidation of the parcels bordering Lorain Road occurred in spite of Halleen's failure to place the restrictive covenant on the property.
 {¶ 10} On April 19, 2005, Halleen filed an application for a use variance on the back residential portion of the consolidated lot. He wanted to use this portion as surface parking for inventory; therefore, he proposed to change the use from residential to commercial. In support of his application, Halleen argued the parcel is landlocked; therefore, it was unsuitable for its zoned residential use. The planning commission expedited the matter for consideration by the BZA. *Page 6 
 {¶ 11} After a hearing on the matter, the BZA denied Halleen's application for the variance finding Halleen had failed to demonstrate that substantial justice would be served by the issuance of the variance. The BZA also found that Halleen had successfully operated the dealership for years without using the residential property for commercial purposes. The BZA further found that Halleen knew of the residential restrictions when the property was purchased. In addressing the three elements for a use variance, the BZA held: (1) "the property does not suffer a hardship due to any peculiar physical characteristics but is subject to the same zoning restrictions generally shared by other lands;" (2) "refusal to permit storage of commercial vehicles on residentially zoned land does not deprive Halleen of substantial property rights * * * Halleen has failed to show that the economic viability of existing car dealership as a whole would be so affected by the restricted use of this portion of the lot;" (3) the proposed use is "contrary to the purpose and intent of the Zoning Code to protect against such commercial intrusion upon residential neighborhoods, especially by reason of noise and pollution." The trial court affirmed the BZA ruling, and Halleen filed this appeal to our court.
 Standard of Review {¶ 12} Our standard of review differs from the standard of review that the trial court applies. The trial court considers the entire record before it and "determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, *Page 7 
unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence."[1] Our review is "more limited in scope." R.C. 2506 provides:
 "This statute grants a more limited power to the court of appeals to review the judgment of the common pleas court only on `questions of law,' which does not include the same extensive power to weigh `the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court. It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. * * * The fact that the court of appeals, or this court, might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so.'"[2]
 Denial of the Variance Results in UnconstitutionalTaking {¶ 13} In his first assigned error, Halleen argues the BZA's denial of his variance results in a taking of his property in violation of theFifth and Fourteenth Amendments of the United States Constitution, and Article I, § 19 of the Ohio constitution. We disagree.
 {¶ 14} The test for determining whether a taking has occurred has recently been modified by the United States Supreme Court in the decision of Lingle v. Chevron U.S.A., Inc.[3] Prior toLingle, a party could establish a zoning related takings claim on one of two grounds: (1) the zoning provision did not substantially advance a *Page 8 
legitimate municipal health, safety or welfare interest, or (2) the zoning restriction deprived an owner of all economically viable use of the property.[4] In Lingle, the United States Supreme Court held that the "substantially advance" formula is not a valid method of identifying compensable regulatory takings.[5] Rather, the United States Supreme Court held that the "substantially advances" formula is a due process test, which has no place in takings jurisprudence.[6] AsLingle explained, the focus of the takings analysis is on whether the governmental act takes property, not on whether the government has a good or bad reason for its action.[7] The Southern District Court of Ohio in Trafalgar Corp. v. Miami County Bd. of County Comm'n][8]
recently interpreted Lingle as follows:.
 "The Court clarified that Takings Clause claims could be shown only (1) where there is a permanent physical invasion of property (Loretto v. Teleprompter Manhattan CATV Corp. (1982), 458 U.S. 419, 102 S. Ct. 3164, 73 L. Ed. 2d 868 (state law requiring landlords to permit cable companies to install cable facilities in apartment buildings effected a taking); (2)regulations completely deprive an owner of all economically beneficial uses of the property (Lucas v. South Carolina Coastal Council (1992), 505 U.S. 1003, 1014, 112 S. Ct. 2886, 120 L. Ed. 2d 798; or (3) takings governed by Penn Central Transp. Co. v. New York City
(1978), 438 U.S. 104, 98 S. Ct. 2646, 57 L. Ed. 2d 631."[9] *Page 9 
 {¶ 15} Halleen argues the residential zoning on the back lot deprives him of all economically viable uses for his property. Therefore, he is relying on a taking pursuant to Lucas v. South Carolina CoastalCouncil.[10] The United States Supreme Court in Lucas held: "[C]itizens acquire a `bundle of rights' when they take title to property. In accordance with the Takings Clause, the `bundle' cannot be held subject to the state's subsequent decision to eliminate all economically beneficial uses and a regulation having such effect cannot be enacted or sustained without compensation being paid to the owner. * * *"[11] However, the Court "in Lucas [also held] the government must pay just compensation for such `total regulatory takings,' except to the extent that `background principles of nuisance and property law' independently restrict the owner's intended use of the property."[12]
Specifically, it is not a taking when the restricted use preventing the nuisance does not affect the entire property.[13] Therefore, Halleen must establish that the zoning restriction deprives him of all economically viable uses of the property and that the restricted use did not prevent a nuisance. Thus, to a certain extent, a two-part analysis still remains. We conclude Halleen failed to meet his burden. *Page 10 
 {¶ 16} Initially, we note that Miss Duffy, the neighbor to the west of the parcel, desires to purchase this lot. However, as the Ohio Supreme Court in Negin v. City of Mentor[14] held, the fact that a neighbor would like to purchase the parcel does not constitute an economically viable use for the owner of the parcel.
 {¶ 17} Nonetheless, we still conclude the restriction on the lot does not constitute a taking. It is only when one looks at the parcel in isolation that issues regarding its economic viability become a concern. However, when looking at the parcel, we have to consider that it has been consolidated with two other parcels, thereby forming one large tract of land. In doing so, it is clear the parcel is not landlocked as it is part of the consolidated property, which has access to Lorain Road.
 {¶ 18} We understand that this access to Lorain Road does not create a viable alternative for providing access to a home, should one be placed on the back parcel. However, Halleen has failed to show that requiring the relatively small area to the back of the lot to remain residential impacts the economic viability of the consolidated parcel as a whole.
 {¶ 19} The consolidated property as a whole has been used to run a profitable automobile dealership. The zoning on the back portion of the parcel has not prevented Halleen from receiving an economic benefit from the consolidated parcel. *Page 11 
In fact, Halleen was unable to state what additional profit he would make from using the back portion of the parcel as a surface lot because he had not yet "crunched the numbers." Consequently, Halleen failed to show that he was deprived of an economic benefit by not being able to use the back portion of the consolidated lot as a surface lot.
 {¶ 20} Additionally, the BZA found the buffer was necessary in order to protect the adjacent neighbors from noise and pollution. These can be considered to constitute nuisance issues.
 {¶ 21} Moreover, the court in Lucas, also held:
 "where the State seeks to sustain regulation that deprives land of all economically beneficial use, we think it may resist compensation only if the logically antecedent inquiry into the nature of the owner's estate shows the proscribed use interests were not part of his title to begin with. This accords, we think, with our `takings' jurisprudence, which has traditionally been guided by the understandings of our citizens regarding the content of, and the States's power over, the `bundle of rights' that they acquire when they obtain title to property."[15]
 {¶ 22} In the instant case, there is no dispute that this section of the consolidated parcel has always been zoned residential. When Halleen acquired title of the consolidated property, this section of it was zoned residential. Hence, having the property zoned as commercial was never within the "bundle of rights" Hallen had as to this property. *Page 12 
 {¶ 23} Based on the record before us, we conclude the trial court did not abuse its discretion by declining to find the denial of the variance constituted a taking. Accordingly, Halleen's first assigned error is overruled.
 Consideration of New Evidence {¶ 24} In his second assigned error, Halleen contends the trial court abused its discretion by considering the BZA's "order and findings" because the document was drafted and approved after Halleen filed his appeal in the court of common pleas. We disagree.
 {¶ 25} We initially note that Halleen failed to object to the BZA's order and findings in the trial court. Therefore, he is precluded from raising this issue on appeal.[16] Nonetheless, we find the trial court properly considered the BZA's order and findings.
 {¶ 26} Halleen originally filed his appeal of the BZA's decision based on an excerpt of a rough draft of the BZA minutes dated August 4, 2005, which was emailed to Halleen's counsel by the Clerk of Commissions. The minutes were not approved by the board until October 6, 2005. At that same time the "Board's Findings and Order" were also reviewed and adopted. Therefore, it was from the *Page 13 
October 6, 2005 date that the appeal should have been taken. A decision of an administrative board must be finalized before an appeal from such a decision may be taken pursuant to R.C. 2506.[17] "Until a written record is made and approved, the acts in question are subject to all the vagueness and uncertainty that characterizes oral pronouncements."[18]
The trial court properly considered the BZA's "Findings and Order." Accordingly, Halleen's second assigned error is overruled.
 Denial of Variance Created Unnecessary Hardship {¶ 27} In his third assigned error, Halleen contends the denial of the proposed use variance imposes an unnecessary hardship upon him. We disagree.
 {¶ 28} A use variance authorizes land to be used for "purposes other than those permitted in the [zoning] district as prescribed in the relevant regulation."[19] A board of zoning appeals maintains wide latitude in deciding whether to grant or deny a variance.[20] In making its determination to grant or deny a variance, the board of zoning appeals must determine whether enforcement of the resolution will cause the property owner an unnecessary hardship.[21] "Unnecessary hardship" results when it *Page 14 
is not economically feasible to put the property to a permitted use under its present zoning classification due to characteristics unique to the property.[22] However, merely stating that the land would be more valuable with the variance, or less valuable without it, does not amount to a sufficient "hardship."[23] Rather, evidence must be presented to show that the property is unsuitable to any of the permitted uses as zoned.[24]
 {¶ 29} Halleen contends that the parcel is unsuitable as zoned because it is landlocked, which prevents a house from being placed on the parcel. However, in arguing this, Halleen continues to urge us to consider the plot in isolation, when in fact, it is part of a larger plot due to the consolidation that occurred in 1979. As we held in the first assigned error, the parcel is not landlocked because of its consolidation with the larger parcels.
 {¶ 30} Additionally, as we held above, the consolidated property as a whole is currently being used as a successful car dealership. Halleen failed to show that the profit that could be made by using the extra lot, would outweigh the benefit the parcel currently provides as a buffer to the neighborhood. The residential portion functions, *Page 15 
as Halleen's uncle had promised, as a buffer between the commercial use and neighboring residential property.
 {¶ 31} Moreover, the Ohio Supreme Court has held "where a purchaser of commercial property acquires the premises with knowledge of the zoning restrictions, he has created his own hardship and generally cannot thereafter apply for a zoning variance based on such hardship."[25] In concluding this, we note Halleen contended he was "unsure" whether he was aware of the zoning restriction when he purchased the dealership; however, apparently the board did not believe that Halleen was unaware of the restriction. Because his prior knowledge is a factual determination, it is not within our authority to find differently as we are restricted to review the trial court's judgment solely for errors of law.[26] Accordingly, Halleen's third assigned error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 *Page 16 
of the Rules of Appellate Procedure.
PATRICIA ANN BLACKMON, JUDGE
MELODY J. STEWART, J., CONCURS; ANTHONY O. CALABRESE, JR., P.J., DISSENTS (SEE ATTACHED DISSENTING OPINION.)
[1] Henley v. City of Youngstown Bd. of Zoning Appeals,90 Ohio St.3d 142, 147, 2000-Ohio-493.
[2] Id., quoting Kisil v. Sandusky (1984), 12 Ohio St.3d 30, 34.
[3] (2005), 544 U.S. 528, 125 S.Ct. 2074, 161 L.Ed.2d 876.
[4] Agins v. Tiburon (1980), 447 U.S. 255, 260, 65 L.Ed.2d 106,100 S.Ct. 2138.
[5] 125 S.Ct. at 2085.
[6] Id. at 2084.
[7] Id. at 2083-84.
[8] (S.D. Ohio, 2006), Case No. 3:05-CV-084.
[9] Id.
[10] Supra.
[11] Id. at 2899.
[12] Lingle at 538, quoting Lucas, 505 U.S. at 1026-1032.
[13] Lucas, 505 U.S. at 1026.
[14] (1982), 6 Ohio St.3d 238.
[15] Id. at 1027.
[16] State ex rel. Martin v. Cleveland (1993), 67 Ohio St.3d 155, 157;Harlemert v. City of Oakwood (June 27, 2003), 2nd Dist. No. 17983.
[17] Singh v. Holfinger (Jan. 29, 1991), 10th Dist. No. 90AP-639.
[18] Swafford v. Norwood Bd. of Edn. (1984), 14 Ohio App.3d 46.
[19] Schomaeker v. First Nat'l Bank (1981), 66 Ohio St.2d 304,306.
[20] Id.
[21] Set Products, Inc. v. Bainbridge Twp. Bd. of Zoning Appeals
(1987), 31 Ohio St.3d 260, 263.
[22] Hulligan v. Bd. of Zoning Appeals (1978), 59 Ohio App.2d 105,109, quoting Fox v. Johnson (1971), 28 Ohio App.2d 175, 181.
[23] Id.
[24] See Cole v. Bd. of Zoning Appeals (1973), 39 Ohio App.2d 177,183-84.
[25] Consol. Mgmt., Inc. v. Cleveland (1983), 6 Ohio St.3d 238, 242;Nigro v. City of Parma, Cuyahoga App. No. 82594, 2003-Ohio-6637.
[26] Henley, supra.