[Cite as *Pro-Tow, Inc. v. Columbus Bd. of Zoning Adjustment*, 2019-Ohio-3462.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Pro-Tow, Inc., :

     Appellant-Appellant, :

                                       No. 18AP-629
v. : (C.P.C. No. 15CV-7417)

Columbus Board of Zoning Adjustment, : (REGULAR CALENDAR)

     Appellee-Appellee. :

D E C I S I O N

Rendered on August 27, 2019

**On brief:** *Gordon P. Shuler,* for appellant.

**On brief:** *Zach Klein,* City Attorney, and *Alexandra Pickerill,* for appellee. **Argued:** *Alexandra Pickerill.*

APPEAL from the Franklin County Court of Common Pleas

HANDWORK, J.

{¶ 1} Plaintiff-appellant, Pro-Tow, Inc., appeals from a decision of the Franklin County Court of Common Pleas affirming an order of appellee, the City of Columbus Board of Zoning Adjustment ("BZA"). The BZA order denied appellant's application for a special use permit and variances. For the following reasons, we affirm the common pleas court judgment.

**I. Facts and Procedural History**

{¶ 2} On October 18, 2013, appellant purchased the real property located at 1669 Harmon Avenue. The property is approximately five acres, located on the west side of Harmon Avenue, approximately 700 feet north of Hart Road. (July 28, 2015 Tr. at 2; Exs.) The property's frontage which faces Harmon Avenue is 225 feet and zoned M-2, manufacturing. This includes a paved parking lot and an office building. The rest of the

property is zoned M, manufacturing. Appellant began using the property as an impound lot on the M zoned area, surrounded by a fence. On December 18, 2014, a zoning code violation order containing several violations was issued.

{¶ 3} On February 19, 2015, appellant applied to the BZA for a special permit to operate the impound lot and sought several variances from development standards. Appellant has since withdrawn all the variance requests. On June 23, 2015, the BZA conducted a public hearing on appellant's application for a special permit and variances. The city staff recommended approval of appellant's application, subject to certain conditions with which appellant was willing to comply. The Southwest Area Commission also recommended approval of appellant's application. However, the property owners of 1685 Harmon Avenue, Hubert and Diana West, which is the property immediately south and adjacent to appellant's property, testified in opposition to appellant's application during the hearing.

{¶ 4} The West property is a single family home sitting on approximately one-half acre. The property is zoned M-2, but the Wests have lived there approximately 20 years. Currently, Hubert and Diana, their adult son, Hubert West, Jr., and young grandchildren live at the residence. The West property is the only residential property in the area.

{¶ 5} The impound lot is required to be open 24 hours a day, seven days a week, because appellant has contracts to tow vehicles that have been seized by the city of Columbus, the city of Grove City, and the Ohio State Highway Patrol. The owners of towed vehicles attempt to retrieve their vehicles at any hour of the day and are frequently angry.

{¶ 6} Hubert West, Sr. testified regarding the negative impact that the impound lot has had on his property and the area. He related that there is significant traffic at all hours, the smell of gasoline, racing on Harmon Avenue, people yelling, and car horns. (June 23, 2015 Tr. at 8.) He testified that people enter his yard to climb the fence between the two properties to retrieve their cars. (June 23, 2015 Tr. at 9.) He complained that people mistake his house for the impound lot office and knock on his door at all hours to demand the return of their cars.

{¶ 7} Diana West testified that she did go over to the impound lot at one point at approximately 2:00 a.m. and complained about the trucks running and lights on during the night and was assured it would not happen any longer. However, it continues. (June 23,

2015 Tr. at 14.) Diana telephoned the police regarding the motorcycle racing along Harmon Avenue. However, when asked, Diana testified she was not sure the racing was related to the impound lot, but she had seen the motorcycles on the lot. (June 23, 2015 Tr. at 15.) She explained that she could not open her windows because of the smell of gasoline and the dust since the impound lot itself was not paved, only the parking lot in front was paved. (June 23, 2015 Tr. at 15-16.)

{¶ 8} The BZA voted to table appellant's application with the hope that appellant and the Wests would be able to resolve the issues that the West family raised. On July 28, 2015, the BZA conducted a second public hearing on appellant's application for a special permit and variances. The West family again testified in opposition to the special permit.

{¶ 9} Appellant's attorney discussed the plans appellant had to prohibit people from mistaking the West property for the impound lot office. He explained that appellant would erect a privacy fence to the setback area and then a smaller fence to the front of the property, along with more signs to prevent customers from going to the West property. (July 28, 2015 Tr. at 5.)

{¶ 10} Mr. West again testified that there are many problems, including lights that are in his back yard. (July 28, 2015 Tr. at 10.) He explained an incident that occurred on July 4, 2015. His family was in his back yard and a man was next door at the impound lot swinging an ax. (July 28, 2015 Tr. at 11.) He again testified that people go through his yard to climb the fence to retrieve their cars. (July 28, 2015 Tr. at 11.) His sons have chased people out of their yard. (July 28, 2015 Tr. at 12.)

{¶ 11} Hubert West, Jr. also testified that it is difficult to sleep because people want to retrieve their cars at all hours. The night before the hearing, he stopped a man from entering the West garage. (July 28, 2015 Tr. at 15.) He testified that the impound lot employees race motorcycles because they come from behind the gate. (July 28, 2015 Tr. at 16.) His niece is no longer permitted to visit because of the racing motorcycles. (July 28, 2015 Tr. at 16.)

{¶ 12} Victor West testified and stated that the impound lot makes the Wests feel uncomfortable in their home. There are piles of tires, bent metal, and other things along the fence. The racing of the motorcycles is unsafe. They play loud music during the early morning hours. (July 28, 2015 Tr. at 16.)

{¶ 13} Finally, when asked, Hubert West testified that there was no compromise acceptable to him for the impound lot to operate. He only wanted them to stop conducting business. (July 28, 2015 Tr. at 19.)

{¶ 14} At the conclusion of the testimony, the BZA voted to deny the special permit application and the variances. Appellant appealed the BZA's order denying the special permit to the court of common pleas pursuant to R.C. 2506.01. The common pleas court found appellant failed to sustain its burden to demonstrate that the BZA's decision is erroneous and found that it was not unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence. Thus, the common pleas court affirmed the BZA's order.

## II. Assignment of Error

{¶ 15} Appellant appeals and assigns the following assignment of error for our review:

> THE TRIAL COURT, ON APPEAL IN THIS ADMINISTRATIVE PROCEEDING, ERRED AS A MATTER OF LAW WHEN IT UPHELD THE DECISION OF THE COLUMBUS BOARD OF ZONING ADJUSTMENT DENYING THE APPLICATION OF APPELLANT PRO-TOW, INC. FOR A SPECIAL PERMIT TO OPERATE AN IMPOUND LOT ON PROPERTY ZONED M-MANUFACTURING, ON THE SOLE GROUND THAT THE SPECIAL PERMIT COULD NOT BE GRANTED WITHOUT SUBSTANTIAL DETRIMENT TO THE PUBLIC GOOD.

## III. Analysis

{¶ 16} R.C. 2506.04 provides the standard of review for appeals taken pursuant to R.C. 2506.01 and provides as follows:

> If an appeal is taken in relation to a final order, adjudication, or decision covered by division (A) of section 2506.01 of the Revised Code, the court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on

questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505 of the Revised Code.

{¶ 17} In *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142 (2000), the Supreme Court of Ohio explained that the common pleas court must consider "the 'whole record,' including any new or additional evidence admitted under R.C. 2506.02, and [determine] whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence" in an R.C. Chapter 2506 administrative appeal. *Cooper State Bank v. Columbus*, 10th Dist. No. 14AP-414, 2015-Ohio-2533, ¶ 16, quoting *Henley*. "Although a hearing before a common pleas court pursuant to R.C. 2506.01 is not a de novo review, 'it often in fact resembles a de novo proceeding.' " *Cleveland Clinic Found. v. Cleveland Bd. of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, ¶ 24, quoting *Cincinnati Bell v. Glendale*, 42 Ohio St.2d 368, 370 (1975). R.C. 2506.03 specifically provides that an appeal pursuant to R.C. 2506.01, "shall proceed as in the trial of a civil action," and makes liberal provision for the introduction of new or additional evidence. *Cincinnati Bell* at 370.

{¶ 18} "In reviewing an appeal of an administrative decision, a court of common pleas begins with the presumption that the board's determination is valid, and the appealing party bears the burden of showing otherwise." *Hollinger v. Pike Twp. Bd. of Zoning Appeals*, 5th Dist. No. 2009CA00275, 2010-Ohio-5097, ¶ 15. A common pleas court should not substitute its judgment for that of an administrative board, unless the court finds that there is not a preponderance of reliable, probative, and substantial evidence to support the administrative board's decision. *Dudukovich v. Lorain Metro. Hous. Auth.*, 58 Ohio St.2d 202, 207 (1979). " '[T]he Court of Common Pleas must give due deference to the administrative resolution of evidentiary conflicts. * * * However, the findings of the agency are by no means conclusive.' " *Kisil v. Sandusky*, 12 Ohio St.3d 30, 35 (1984), quoting *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 111 (1980).

{¶ 19} The standard of review applied by the court of appeals is more limited in scope and requires that court to affirm the common pleas court, unless the court of appeals finds, as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative, and substantial evidence. It is the common pleas court's duty to examine the evidence but that is not the duty of the court of appeals. *Henley*

at 438, quoting *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 261 (1988). An appellate court may not substitute its judgment for the administrative agency or the common pleas court. *Id.*

{¶ 20} "Within the ambit of questions of law for appellate-court review is whether the common pleas court abused its discretion." *Independence v. Office of the Cuyahoga County Executive*, 142 Ohio St.3d 125, 2014-Ohio-4650, ¶ 14, citing *Kisil* at 34, fn. 4. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). A court of appeals must affirm unless, as a matter of law, it finds "that the trial court's decision is not supported by a preponderance of reliable, probative, and substantial evidence." *Independence* at ¶ 14, citing *Kisil* at 34.

{¶ 21} Appellant contends that the common pleas court erred as a matter of law when it upheld the BZA order denying appellant's application for a special permit to operate an impound lot. Appellee argues that appellant did not raise this argument in the common pleas court and, therefore, waived it. Appellee contends that since appellant argued to the common pleas court that the denial of the special permit was arbitrary and capricious because appellant established conformance with the requirements of Columbus City Code 3307.06(A), it could not argue before this court that the common pleas court erred as a matter of law when it affirmed the BZA order because the BZA erred in denying the special permit on the ground that it could not be granted without substantial detriment to the public good. Appellant counters that it is only raising an issue of law, the interpretation of Columbus City Code 3307.06(A), not a weight of the evidence argument.

{¶ 22} Appellant raised the same issue in both courts—whether the denial of the special permit was appropriate. However, appellant couched the issue in terms of the standard of review of each court, thus, not waiving the issue. With our standard of review in mind, appellant asserts that its argument raises a question of law. However, the content of appellant's argument actually seeks to have this court reweigh the evidence and find it was insufficient, which is not within our providence. *Dudukovich* at 207.

{¶ 23} Columbus City Code ("C.C.C.") 3303.09 defines an "impound lot" as "any non-publicly owned and operated land designed, intended to be used, or used for keeping of motor vehicles seized or retained by law." C.C.C. 3389.07 provides that an impound lot

requires a special permit and shall only be located in an area zoned M, manufacturing district.  C.C.C. 3307.06 grants authority to the BZA to issue special permits and provides in relevant part, as follows:

> The board of zoning adjustment shall have the power:
>
> A. To grant special permits for uses listed in Chapter 3389 where it is shown that the special use can be granted without substantial detriment to the public good, without substantial impairment of the general purpose and intent of the zoning district in which the use is proposed to be located, and without significant incompatibility with the general character of the neighborhood.

{¶ 24}  In this case, the appellant was required to demonstrate to the BZA that (1) the impound lot would not result in a substantial detriment to the public good, (2) that the impound lot would not substantially impair the general purpose and intent of the M, manufacturing zoning district, and (3) that the impound lot was not significantly incompatible with the general character of the neighborhood.  The parties agree that the issue in this appeal is whether appellant's impound lot resulted in a substantial detriment to the public good.

{¶ 25}  A special permit " 'authorizes a use which is permitted by zoning regulations, subject to the issuance of such a permit or conditional certificate.  Thus, the special permit results in the establishment or maintenance of a use in the location and under the circumstances mandated by the zoning ordinance or resolution, and such permit may be granted upon whatever terms are imposed by the zoning ordinance or resolution.' " *Nunamaker v. Bd. of Zoning Appeals*, 2 Ohio St.3d 115, 118 (1982), quoting *Boston v. Montville Twp. Zoning Bd. of Appeals*, 32 Ohio Misc.118, 120-31 (1972).  " 'The inclusion of conditional use provisions in zoning legislation is based upon a legislative recognition that although certain uses are not necessarily inconsistent with the zoning objectives of a district, their nature is such that their compatibility in any particular area depends upon surrounding circumstances.' " *Comprehensive Offender Program Effort v. Columbus*, 10th Dist. No. 96APE10-1298 (Mar. 31, 1997), quoting *Gerzeny v. Richfield Twp.*, 62 Ohio St.2d 339, 341 (1980).  Thus, the zoning may be appropriate for a special permit use but the location and surrounding circumstances may cause the use to be denied.

{¶ 26} The BZA found that the impound lot resulted in a substantial detriment to the public good and denied the application for the special permit. The common pleas court found that there is a preponderance of substantial, reliable, and probative evidence provided by the West family testimony that appellant's impound lot resulted in a substantial detriment to the public good.

{¶ 27} The West family provided many examples of the substantial detriment the impound lot has on their quality of life as the adjoining neighbor. The BZA specifically considered this impact. At the June 23, 2015 hearing, Chairman Maniace stated:

> I don't know, I can't speak for all the Board's members, if I am totally comfortable to vote for this, given the burden of the nature of the operation. The fact that you have these people coming at 4:00 in the morning, and that's not your fault, but it seems to [be] the nature of an operation like this.

(June 23, 2015 Tr. at 27.)

{¶ 28} Appellant acknowledged that the company operated 24 hours per day, but did so because of its contractual obligations to operate 24 hours per day, not to inconvenience anyone. (June 23, 2015 Tr. at 30.) During the second hearing on July 28, 2015, the board members discussed the substantial detriment. Mr. Jones stated, "[I]t does appear that this is to the detriment of the public good, primarily, the public being the adjoining neighbors. * * * But clearly, it appears to be a substantial detriment to the public as it's been presented to us. This is the public." (July 28, 2015 Tr. at 27.) After some discussion, Chairman Maniace stated: "We believe there is a substantial detriment to the public good. Not that there isn't a big need for impound lots. Realistically, there is a service, but there may be a [sic] issue when trying to put one next to an existing house." (July 28, 2015 Tr. at 33.) He further stated, "I agree * * * that this is a good, this is a necessary use. It's not that impoundment lots shouldn't exist. But, part of the public good is what it does to a neighbor. And, I think there is such an intensity to the negativity of this use that I'm going to vote no. I do not see this as an acceptable use on any type of Special Permit for this property." (July 28, 2015 Tr. at 41-42.)

{¶ 29} Appellant argues that "public good" is not defined by one residence, but rather, by people as a whole. Appellant contends that there is no evidence in the record that the impound lot is not good for the city. "Public good" is not defined in C.C.C. Title 33.

However, the testimony presented at the hearings was evidence of detrimental consequences, especially to the West family. Appellee argues that the criminal activity, the speeding and the motorcycle racing are examples of the detrimental effect on the entire community as described by one family. The West family testimony provided substantial, reliable, and probative evidence that the impound lot resulted in a substantial detriment to the public good. The BZA interpretation of the public good is a reasonable interpretation and entitled to deference.

{¶ 30} An administrative agency's reasonable interpretation of local zoning codes is entitled to deference by a reviewing court and is to be presumed valid because the administrative agency possesses an area of administrative expertise. *Saine v. Bexley Bd. of Zoning Appeals*, 10th Dist. No. 97APE06-820 (Nov. 25, 1997), citing *Four Winners, Inc. v. Columbus Dev. Regulation Div. Admr.*, 83 Ohio App.3d 118, 124 (10th Dist.1992); *Schomaeker v. First Natl. Bank*, 66 Ohio St.2d 304, 309 (1981); *Conrad*. Here, appellant asks us to weigh the evidence regarding the detrimental effect to determine if it is a substantial effect. It is not the role of an appellate court to do so. Appellant's assignment of error is overruled.

## IV. Conclusion

{¶ 31} For the foregoing reasons, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BRUNNER and BEATTY BLUNT, JJ., concur.

HANDWORK, J., retired, of the Sixth Appellate District, assigned to active duty under the authority of the Ohio Constitution, Article IV, Section 6(C).

_____