[Cite as *CBS Outdoor, Inc. v. Cleveland Bd. of Zoning Appeals*, 2013-Ohio-1173.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98141**

# CBS OUTDOOR, INC., ET AL.

PLAINTIFFS-APPELLANTS

vs.

# CITY OF CLEVELAND BOARD OF ZONING APPEALS

DEFENDANT-APPELLEE

## JUDGMENT:
REVERSED AND REMANDED

Administrative Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-755678

**BEFORE:** McCormack, J., S. Gallagher, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:** March 28, 2013

**ATTORNEYS FOR APPELLANT**

Joseph W. Diemert, Jr.
Diane A. Calta
Joseph W. Diemert, Jr. & Associates Co., L.P.A.
1360 SOM Center Road
Cleveland, OH 44124


**ATTORNEYS FOR APPELLEE**

Barbara A. Langhenry
Director of Law
City of Cleveland

Carolyn M. Downey
Assistant Director of Law
601 Lakeside Avenue, Room 106
Cleveland, OH 44114-1077

TIM McCORMACK, J.:

**{¶1}** In this administrative appeal, CSX Railroad Company ("CSX") and CBS Outdoor, Inc. ("CBS") sought a variance that would allow CBS to operate a "tri-face" billboard in the city. The City of Cleveland's Board of Zoning Appeals ("the Board") denied the request, and the trial court affirmed it.

**{¶2}** After a careful review of the record and applicable law, we conclude this matter must be remanded to the trial court for a hearing pursuant to R.C. 2506.03(A)(5), because the Board failed to file the conclusions of fact in support of its decision to allow for a meaningful judicial review.

### Substantive Facts and Procedural History

**{¶3}** CSX owns a property at 4965 Broadview Road, Cleveland, adjacent to Interstate 480. In 2007, CBS, a billboard company, acquired an interest in a billboard located in the property. This billboard is one of the three billboards CBS owns in the Cleveland market. When CBS acquired it in 2007, it was a traditional two-sided billboard, illuminated from the bottom of the board. The original permit for the billboard allowed a height of 50 feet. CBS later obtained a permit for a 70-foot high billboard.

**{¶4}** CBS was interested in converting it to a digital (LED) billboard. However, digital (LED) billboards are prohibited under the Cleveland Codified Ordinances ("C.C.O."). C.C.O. 350.10(j) states:

(j)   Illumination.   Billboards shall be illuminated only by means of continuous reflected light. Internally-illuminated or back-lit billboards shall not be permitted. Billboards shall not include *automatic changeable copy signs* (i.e., electronic message centers) as defined in division (f)(2) of Section 350.03.   (Emphasis added.)

**{¶5}**   C.C.O. 350.03(f) has two definitions for a "changeable copy sign," one for an "automatic changeable copy sign," and one for a "manual changeable copy sign."   It defines an "automatic changeable copy sign" as a "sign or portion thereof on which the copy changes automatically or animation is displayed through electrical or electronic means (e.g., time and temperature units and message centers)."   It defines a "manual changeable copy sign" as a "sign or portion thereof on which copy is changed manually through placement of letters or symbols on a sign panel."

**{¶6}**   The city's code prohibits digital (LED) billboards generally.   The only situation where such a billboard can be installed is if it replaces at least two existing billboards that are nonconforming due to its age and condition.   C.C.O. 350.10(l)(5).

**{¶7}**   Because none of the three billboards owned by CBS were nonconforming and required replacement,   CBS decided to turn the subject billboard into a "tri-face" billboard.   A "tri-face" billboard is made of triangle-shaped slats, which are rotated by an electronic mechanism to display up to three different advertisements in succession. Each advertisement is displayed for a minimum of eight seconds, and it is illuminated by continuous light at the bottom of the billboard's face, like   traditional two-sided billboards; the "tri-face" feature is limited to only one side of the billboard.   The "tri-face" is not specifically referred to in the city's code, and it does not clearly fit into

the definition of "automatic changeable copy sign." CBS alleged that before it converted the subject billboard into a "tri-face" board, it was verbally advised by a city representative that such a billboard would be permissible under the city's code. No written confirmation of such permission was introduced into the record.

{¶8} The "tri-face" billboard was operated for a year, until October 10, 2008, when the city's Department of Building and Housing issued a Notice of Violations, citing CSX/CBS for a violation of C.C.O. 350.10(j). The city considered the "tri-face" billboard as exhibiting an "automatic changeable copy sign," prohibited by C.C.O.350.10(j).

{¶9} In response, on December 1, 2008, CBS and CSX applied to the City of Cleveland's Building and Housing Department for a permit to operate the subject billboard with a "changeable copy." The next day, the city denied the permit and issued a Notice of Non-conformance. The department considered "the tri-face" billboard to be exhibiting an "automatic changeable copy sign" and, as such, was prohibited pursuant to C.C.O. 350.10(j), which provided that in a General Industry District, only billboards "illuminated by means of continuous reflected light" would be allowed.

{¶10} CSX and CBS (collectively referred to as "appellants" hereafter) filed two appeals with the Board in Case Nos. 08-205 and 08-220. In No. 08-205, they appealed from the notice of violation. In No. 08-220, they sought a variance from the requirement of C.C.O. 350.10(j).

**{¶11}** The issue in this case is whether a variance should be granted to allow CBS to employ the "tri-face" design in the subject billboard. A discussion on variances is necessary before we discuss any further proceedings conducted in this matter.

### Use v. Area Variance: "Unnecessary Hardship" or "Practical Difficulties"

**{¶12}** The case law indicates there are two types of variances: use variance and area variance. The analysis required of the zoning board in a decision to grant or deny the variance depends on whether the variance sought is a use or area variance.

**{¶13}** A use variance allows land uses for purposes other than those permitted in the district as prescribed in the pertinent regulation; an example of it would be a commercial use in a residential district. *Schomaeker v. First Natl. Bank*, 66 Ohio St.2d 304, 306-307, 421 N.E.2d 530 (1981). An area variance, on the other hand, is a variance that deviates from the zoning code restrictions placed on the construction or placement of structures, typically restrictions on yard, height, frontage, density, or set back. *See Dsuban v. Union Twp. Bd. of Zoning Appeals*, 140 Ohio App.3d 602, 606, 748 N.E.2d 597 (12th Dist.2000)

**{¶14}** The type of the variance sought determines what a property owner must demonstrate in order for the variance to be granted. The courts have required a property owner seeking a use variance to demonstrate that "unnecessary hardship" would ensue if the variance is not granted. *Schomaeker* at 310.

**{¶15}** However, a lesser standard applies to a property owner seeking an area variance. *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34, 465 N.E.2d 848 (1984). In *Kisil*, the

Supreme Court of Ohio held that while an application for a use request must show "unnecessary hardship," an application for an area variance only need to establish "practical difficulties," which, as the court explained, was a lesser standard.

{¶16} The court further explained, in *Duncan v. Middlefield*, 23 Ohio St.3d 83, 491 N.E.2d 692 (1986), that in analyzing "practical difficulties" for area variances, where neighborhood considerations were not as strong as in a use variance, a zoning board of appeals or a reviewing court should weigh the competing interests of the property owner and the community, and the property owner would be required to show that the application of an area zoning requirement was inequitable. *Duncan* at 86. A property owner encounters "practical difficulties" whenever an area zoning requirement (e.g., frontage, setback, height) unreasonably deprived the owner of a permitted use of the property. *Id*. "The key to this standard is whether the area zoning requirement, as applied to the property owner in question, is reasonable." *Id*. In addition, the "practical difficulties" standard differed from the "unnecessary hardship" standard in that no single factor controlled in a determination of "practical difficulties." *Id*.

{¶17} The *Duncan* court enumerated seven factors to be considered and weighed in determining whether a property owner seeking an area variance has encountered practical difficulties in the use of his property. They include, but are not limited to:

(1) whether the property in question will yield a reasonable return or whether there can be any beneficial use of the property without the variance; (2) whether the variance is substantial; (3) whether the essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer a substantial detriment as a result of the variance; (4) whether the variance would adversely affect the delivery of

governmental services (e.g., water, sewer, garbage); (5) whether the property owner purchased the property with knowledge of the zoning restriction; (6) whether the property owner's predicament feasibly can be obviated through some method other than a variance; (7) whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance.

*Id.*

{¶18} Finally, we note that C.C.O. 329.03(b)(1), which governs variances, refers to "unnecessary hardship" and "practical difficulties" without clearly distinguishing between the use variance and the area variance. It states:

(a)   Conditions Requiring Variances. Where there is practical difficulty or unnecessary hardship in the way of carrying out the strict letter of the provisions of this Zoning Code, the Board of Zoning Appeals shall have the power, in a specific case, to vary or modify the application of any such provisions in harmony with the general purpose and intent of this Zoning Code so that public health, safety, morals and general welfare may be safeguarded and substantial justice done.

(b)   Limitation of Variance Powers. Such variance shall be limited to specific cases where:

(1)   The practical difficulty or unnecessary hardship inheres in and is peculiar to the premises sought to be built upon or used because of physical size, shape or other characteristics of the premises or adjoining premises which differentiate it from other premises in the same district and create a difficulty or hardship caused by a strict application of the provisions of this Zoning Code not generally shared by other land or buildings in the same district;

(2)   Refusal of the variance appealed for will deprive the owner of substantial property rights; and

(3)   Granting of the variance appealed for will not be contrary to the purpose and intent of the provisions of this Zoning Code.

**CBS's Appeal to the Board**

{¶19} With the foregoing in mind, we now review the record before us. In appealing to the Board, CBS's pre-hearing brief raised the same arguments it raises in the instant appeal: (1) the subject "tri-face" board is a manual, not automatic, changeable copy billboard; (2) the "tri-face" billboard is protected by the First Amendment; (3) the billboard is located on a railroad property and, therefore not subject to the city's code enforcement; and (4) a variance should be granted under the factors enumerated in *Duncan*, 23 Ohio St.3d 83, 491 N.E.2d 692.

{¶20} On November 9, 2009, the Board conducted a hearing on both appeals, and it focused almost exclusively on whether the subject "tri-face" billboard exhibits an *automatic* changeable copy sign. The city argued it does, because the sign changes "automatically," and, as such, would be prohibited under C.C.O. 350.10(j). CBS argued the "tri-face" billboard does not involve an "automatic" changeable copy sign because it is not an LED billboard, because it is illuminated just like other traditional two-faced billboards. The variance request was not addressed at the hearing.

{¶21} The Board issued two resolutions on November 16, 2009, denying both appeals. The resolution pertaining to No. 08-205 (notice of violation) stated the "tri-face" billboard, which rotates automatically on a timer with the capacity to display three copy images, constitutes an automatic "changeable copy sign" under C.C.O. 350.03(f)(2) and, therefore, is not permitted.

{¶22} The resolution regarding No. 08-220 (variance request) denied the request for variance, on the ground that CBS presented no evidence to support a finding that the

city's zoning code imposed an "unnecessary hardship" on CBS or that CBS was denied all beneficial use, and that granting a variance from the prohibition on automatic changeable copy billboards would be contrary to the purpose and intent of the zoning code.

**The Administrative Appeal to the Common Pleas Court**

{¶23} On December 15, 2009, CBS filed an administrative appeal (Cuyahoga C.P. No. CV-713005) in the Cuyahoga Court of Common Pleas, challenging the Board's denial of both appeals.

{¶24} The parties filed their respective briefs before the trial court. CBS argued the same four issues in its brief as it did before the Board. On February 11, 2011, the trial court issued a decision. It states, in its entirety:

> The court having reviewed the entire record, the court remands this case to the City of Cleveland Board of Zoning Appeals for the limited purpose of considering the application of an area variance using the "practical difficulty" standard set out in *Duncan v. Village of Middlefield* (1986), 91 N.E.2d 692. All other claims presented by the appellants: the prohibition of this sign as an illuminated sign pursuant to Cleveland Codified Ordinance 350.03(F)(2); the denial of First Amendment Protection; and the jurisdictional issues regarding railroad property, are affirmed in favor of the City of Cleveland Board of Zoning Appeals. The court finds the decision of the City of Cleveland Board of Zoning Appeals is not unconstitutional,

illegal, arbitrary, capricious, unreasonable or unsupported by a preponderance of substantial, reliable and probative evidence on the whole record. Reversed and remanded in part.

**{¶25}** Upon remand from the trial court to consider the variance request applying *Duncan*, the five-member Board held a hearing on April 25, 2011. CBS argued the area variance should be granted under the *Duncan* factors: (1) the use of the billboard without the "tri-face" feature would not be a beneficial use; (2) because the change of advertisement copy occurs in a blink of an eye, what the "tri-face" billboard exhibits is not substantially different from a two-sided billboard; (3) the neighborhood will not be different due to the existence of the "tri-face" sign; and (4) there will be no change in the delivery of governmental services.

**{¶26}** The city, on the other hand, argued the variance should not be granted under the *Duncan* factors: (1) CBS could still have a beneficial use of the billboard without the tri-face feature; and (2) pursuant to the spirit and intent of the zoning code, the billboards with a changeable copy can only be installed when it replaces nonconforming billboards.

**{¶27}** At the conclusion of the hearing, one of the five members of the Board made a motion to grant the variance. Two members voted to grant, two voted to deny, and the fifth one abstained. The Board members did not state their reasons for the decisions.

**{¶28}** On May 2, 2011, the Board issued a resolution. The resolution did not address *Duncan*'s "practical difficulties" factors. Rather, it stated that because the Board was unable to achieve the concurring vote of three members required, the variance request was "effectively" denied.

**{¶29}** On May 19, 2011, CBS and CSX appealed from the Board's decision to the trial court. After the parties filed their respective brief, on February 29, 2012, the trial court affirmed the Board's decision. The judgment entry stated, in its entirety:

> The court having reviewed the entire record and the briefs of the appellants and appellees[, the] court affirms the order of the city of Cleveland Board of Zoning Appeals, finding the order is not unconstitutional, illegal, arbitrary, capricious, unreasonable or unsupported by a preponderance of substantial, reliable and probative evidence on the whole record, in accordance with R.C. 2506.04.

**{¶30}** CBS and CSX (collective as "appellants") now appeal to this court, raising five assignments. They state:

> I. The City of Cleveland and ordinance at issue is unconstitutional as it infringes on protected speech.
>
> II. The BZA and lower court, by misapplying the "practical difficulty" standard to the CBS Outdoor request, deprives CBS Outdoor of its unconstitutional [sic] right to operate its billboard.
>
> III. The BZA and lower court misapplied the definition of automatic changeable copy to CBS Outdoor's tri-face equipment and by doing so denied CBS Outdoor of its constitutional right to operate its billboard.

IV. The lower court erred in denying CBS Outdoor an oral hearing pursuant to R.C. 2506.03(A)(5) and 2506.03(B).

V. The lower court erred when it failed to find that because the tri-face billboard is located on railroad property owned by appellant CSX, CBS Outdoor is not required to comply with the city's code.

## **Standard of Review for Administrative Appeals**

**{¶31}** We begin with the standard of review for administrative appeals. The trial court evaluating the decision of an administrative body must weigh the evidence in the record and determine whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence in the record. *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St. 142, 147, 735 N.E.2d 433.

**{¶32}** The standard of review applied by the court of appeals is more limited in scope. *Id.* On appeal to this court, we are granted a rather limited power to review the judgment of the trial court, which does not include the same extensive power to weigh the preponderance of substantial, reliable, and probative evidence as is granted to the trial court. *Id.* Rather, we review the trial court's decision only to determine if the lower court abused its discretion in finding that the administrative order was supported by reliable, probative, and substantial evidence. *Wolstein v. Pepper Pike City Council*, 156 Ohio App.3d 20, 2004-Ohio-361, 804 N.E.2d 75, ¶ 21-22 (8th Dist.).

**{¶33}** The main issue in this appeal is the claim appellants raise in the second assignment of error: whether a variance should be granted to allow the subject billboard to show a "tri-face" changeable copy. Appellants contend that the Board and lower

court misapplied the "practical difficulties" test and deprived them of their right to utilize the "tri-face" feature. We begin our analysis with the recognition that judicial review of an administrative appeal is generally confined to a review of the transcript provided to the court by the administrative agency. *T.O.P. 1 Partners v. Stow*, 73 Ohio App.3d 24, 26, 595 N.E.2d 1044 (9th Dist.1991), citing R.C. 2506.03(A). An exception to this general rule is set forth at R.C. 2506.03, which provides that the trial court is required to conduct an evidentiary hearing when the administrative agency files a deficient or incomplete transcript. R.C. 2506.03 provides, in pertinent part:

> (A) The hearing of such appeal shall proceed as in the trial of a civil action, but the court shall be confined to the transcript as filed pursuant to 2506.02 of the Revised Code unless it appears, on the face of the transcript or by affidavit filed by the appellant, that one of the following apply:
>
> * * *
>
> (5) The officer or body failed to file with the transcript, *conclusions of fact* supporting the final order, adjudication, or decision appealed from;
>
> (B) If any circumstances described in divisions (A)(1) to (5) of this section applies, the court *shall* hear the appeal upon the transcript and such additional evidence as may be introduced by any party. * * *

(Emphasis added.)

{¶34} In the fourth assignment of error, appellants contend the record in this case is incomplete in that the Board failed to file with the transcript the conclusions of fact supporting its denial of the variance request, and therefore, the lower court erred in failing

to hold an hearing to complete the record before issuing its decision pursuant to R.C. 2506.03(A)(5) and 2506.03(B). We find merit to this claim.

**The Record Lacks Conclusions of Fact Regarding the *Duncan* Analysis**

**{¶35}** As the trial court properly determined, the variance request in this case is one for an area variance, as it relates to the physical characteristics of the property; thus, appellants must demonstrate they would encounter "practical difficulties" in the use of the property without the variance. This test involves a lesser standard of proof than the "necessary hardship" test, and it is also important to note that no single factor controls. *Duncan*, 23 Ohio St.3d 83, 491 N.E.2d 692.

**{¶36}** On the record before us, we are unable to determine whether the trial court properly discharged its duty of weighing the evidence in determining whether the Board's decision was supported by the preponderance of substantial, reliable, and probative evidence. This is because the record does not contain conclusions of fact regarding the Board's consideration of the *Duncan* factors.

**{¶37}** We are aware the courts have not required the conclusions of fact to take any specific form under R.C. 2506.03(A)(1), and an administrative body is not required to file a separate document entitled "Conclusions of Fact."

**{¶38}** However, the common pleas court is required to look at the "face of [the] transcript" to determine if the administrative body includes the reasons in support of its final decision. *Concerned Richfield Homeowners v. Planning & Zoning Comm.*, 9th Dist. No. 25033, 2010-Ohio-4095, ¶ 10. Here, the only reference in the Board's May 2,

2011 resolution to any *Duncan* factors is the statement that the tri-face changeable copy would "tripl[e] the area of the billboard," presumably a reference to the "substantial" factor.

**{¶39}** When the transcript provided under R.C. 2506.02 is inadequate or incomplete for a proper judicial review, the appellate courts, including this court, have not hesitated to remand for a hearing.

**{¶40}** In *Aria's Way, LLC v. Bd. of Zoning Appeals*, 173 Ohio App.3d 73, 2007-Ohio-4776, 877 N.E.2d 398 (11th Dist.), the court held that "a common pleas court should, when faced with a transcript of proceedings lacking appropriate conclusions of fact, hold an evidentiary hearing to establish the factual basis for the decision being appealed." *Aria's Way* at ¶ 29. In such a situation, R.C. 2506.03 provides for the trial court to conduct an evidentiary hearing to "fill in the gaps." *Id.*

**{¶41}** In *Card v. Cleveland Civ. Serv. Comm.*, 8th Dist. No. 93991, 2010-Ohio-3200, the city of Cleveland claimed the conclusions of fact were contained in a letter sent to the appellant. We stated that, given the mandate in R.C. 2506.03(B), the letter was not sufficient because it did not contain conclusions of fact to support the commission's determination. We remanded the case to the trial court to hold a hearing and reconsider its decision. We explained the commission should not be able to avoid a review of its decision by the appropriate forum as a result of a failure to include the conclusions of fact to support its decision. *Card* at ¶ 15, citing *Chupka v. Saunders*, 28 Ohio St.3d 325, 328, 504 N.E.2d 9 (1986).

**{¶42}** In *Brookside Auto Parts, Inc. v. Cleveland*, 8th Dist. No. 91721, 2009-Ohio-967, the board of zoning appeals did not file the conclusions of fact. The city argued that the transcript of the hearing before the board contained the necessary factual findings because it reflected that during the hearing, one of the commissioners reviewed what he considered the facts to be and then stated his opinion of how the board should decide Brookside's appeal based on those facts. We reasoned that the resolution reflected only the board's conclusion that the city inspector's decision to issue the notice of violation was neither arbitrary nor capricious, but such a statement was not a finding of fact, it is a conclusion of law. The board's resolution contained no reference to any evidence, i.e., facts, it considered in reaching its decision. And, the board's statement that it reached its decision after due consideration of the testimony and other evidence "offers no insight into what evidence the board found dispositive in making its decision."

**{¶43}** We further reasoned that R.C. 2506.03(A)(5) required that conclusions of fact be filed "with" the transcript, and words in a statute must be given their common, plain, and ordinary meaning unless a contrary intention clearly appears or is otherwise indicated. Considering the ordinary meaning of the words in R.C. 2506.03(A)(5), we were unable to conclude that conclusions of fact were appropriately contained "in" the transcript. The statute explicitly requires separate conclusions of fact, apart from the transcript of the hearing.

**{¶44}** In *Manlou v. Cleveland Civ. Serv. Comm.*, 8th Dist. No. 83214, 2004-Ohio-1112, we also remanded the matter for a hearing. We held that the trial court

erred in affirming the decision of the Civil Service Commission without holding a hearing, because the trial court could not have conducted a meaningful review of the record pursuant to R.C. 2506.03(A)(1), when the commission failed to enumerate any conclusions of fact.

{¶45} We recognize that as long as the court is able to discern the conclusions of fact from the record, a hearing would not be required. For example, in *Global World Peace v. Mayfield Hts. Planning Comm.*, 8th Dist. No. 92848, 2010-Ohio-2213, although the city did not file conclusions of fact, the record contained sufficient detail for the court to discern the reasoning in support of the planning commissioner's decision, and therefore a hearing was not required. In *Concerned Richfield Homeowners v. Planning & Zoning Comm.*, 9th Dist. No. 25033, 2010-Ohio-4095, the court of appeals concluded that the trial court properly determined that the meeting minutes satisfied the mandate of R.C. 2506.03(A)(5), because the meeting minutes contained, as the trial court noted, a detailed expression of each planning commission member's reasoning for approving or denying the variance request.

{¶46} Such is not the case here. The record does not contain sufficient justifications for the Board's denial of the variance under *Duncan*, 23 Ohio St.3d 83, 491 N.E.2d 692, whether in the form of conclusions of fact or otherwise. The summary statement in the resolution that the Board made its decision "after due consideration of the testimony and other evidence submitted at the hearing" provided no insight into how it weighed the evidence or factors under a proper *Duncan* analysis. In fact, it appears the

only reason cited for the denial of the variance was that the Board had no authority to grant a variance without three concurring members of the Board. There is no conclusions of fact regarding a "practical difficulty" analysis, whether "in" or "with" the transcript.

{¶47} Because the record does not contain the conclusions of fact found by the Board to support its decision under *Duncan*, the trial court did not have a complete record to allow it to properly weigh the evidence and determine if the Board's denial of the variance was supported by the preponderance of substantial, reliable, and probative evidence. Under these circumstances, it was an abuse of discretion for the trial court to affirm the Board's decision without a hearing, given the mandate of R.C. 2506.03(B).

{¶48} As the Supreme Court of Ohio noted in *Kisil,* 12 Ohio St.3d 30, 465 N.E.2d 848, R.C. 2506.04 gives the common pleas court power to weigh the evidence and determine whether an administrative body's decision is supported by the preponderance of substantial, reliable, and probative evidence; the statute grants a more limited power to the court of appeals, which does not include the same extensive power to weigh the evidence as is granted to the common pleas court. *Id.* at 34. Because of our limited role in these appeals, we cannot weigh the evidence to determine whether the Board's decision was supported by the evidence under *Duncan*, but must remand to the trial court for a hearing.

{¶49} For the foregoing reasons, appellants' fourth assignment is sustained. Our resolution of this assignment of error renders any analysis with respect to appellants'

remaining assignments of error moot pursuant to App.R. 12(A)(1)(c), and we decline to address them.

{¶50} This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellants recover of said appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

SEAN C. GALLAGHER, P.J., and
KENNETH A. ROCCO, J., CONCUR