[Cite as *1415 Kenilworth, L.L.C. v. Cleveland*, 2023-Ohio-300.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

1415 KENILWORTH, LLC,                :

    Plaintiff-Appellant,         :

                         No. 111249

    v.                           :

CITY OF CLEVELAND, OHIO, ET AL.,   :

    Defendants-Appellees.        :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 2, 2023

---

Administrative Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-21-947529

---

### *Appearances:*

Weston Hurd LLP and Matthew C. Miller, *for appellant.*

Mark Griffin, Cleveland Director of Law, and Carolyn M. Downey, Assistant Director of Law, *for appellees.*

FRANK DANIEL CELEBREZZE, III, P.J.:

{¶ 1} Plaintiff-appellant 1415 Kenilworth, LLC ("appellant") appeals from the trial court's order affirming the Cleveland Board of Zoning Appeals' ("BZA") decision denying appellant's request for an area variance. For the reasons that follow, we affirm.

## I. Factual and Procedural History

{¶ 2} In 2019, appellant acquired three parcels of land located at 1415 Kenilworth Avenue in Cleveland's Tremont neighborhood consisting of a church,[1] a rectory, and a parking lot. Appellant acquired the parcels intending to construct a five-story apartment building ("the Project") on the parking lot and rectory parcels, which, together, allowed appellant approximately 17,000 square feet to construct the Project. Appellant met its first roadblock when the Cleveland Landmarks Commission expressed that it would oppose appellant's choice to raze the rectory since it is a historic building. Appellant decided that instead of fighting the Landmarks Commission, it would still attempt to build the Project, but now the square footage was reduced to approximately 9,800 square feet.

{¶ 3} The parcels at issue are zoned within Cleveland's "Urban Form Overlay District" ("the UF District") that was established in 2017 to "foster a high level of walkability and design quality for Cleveland's urban streets" by encouraging "pedestrian-oriented building features, preserving and enhancing the architectural character of new and existing buildings and protecting public safety by minimizing conflicts between vehicles and pedestrians." Cleveland Codified Ordinances ("C.C.O.") 348.04(a).

{¶ 4} In the UF District, all new residential constructions are statutorily required to provide a set number of off-street parking spaces based on the number

---

[1] The church was the former Holy Ghost Byzantine Catholic Church and is on the National Register of Historic Places. This designation prohibited appellant from razing the church and as a result, appellant later sold the parcel containing the church.

of residential units proposed. C.C.O. 348.04(d)(4)(A). All parties agree that pursuant to the ordinance, appellant was required to furnish at least 30 off-street parking spaces within 400 feet of the building, as calculated by appellant's proposal that the Project would contain 46 residential units. Since appellant decided to forgo the rectory space for the Project and was working with more limited space than originally planned, appellant sought a zoning variance pursuant to C.C.O. 348.04(f). Appellant applied for a variance excusing it from furnishing any off-street parking. The application was rejected, and appellant appealed to the BZA.

{¶ 5} On September 14, 2020, the BZA held a hearing on the matter. All members of the BZA were present. David Maison, an architect, spoke on behalf of appellant and detailed the Project's planning history. Maison noted that appellant first began looking at the property in 2019 intending to renovate the rectory. Appellant quickly abandoned this idea after realizing that "the cost to renovate the [rectory] exceeded market value when finished." (Tr. 7.) Appellant then looked into razing the rectory and using both the rectory and parking lot parcels to construct a residential building but were met with opposition from the community and the Landmarks Commission. Appellant decided to forgo any attempts to fight the community and Landmarks Commission and, instead, reduced plans for the Project to fit on just the parking lot parcel.

{¶ 6} Brent Zimmerman, a project developer, also spoke on behalf of appellant. Zimmerman highlighted the vision behind the Project, alluding to planned features that eliminated the need for residents to own vehicles.

Zimmerman noted that there would be "bike storage on each level" and "a bus stop that goes right in front of the building," and that it intended to pay all utilities to make it an affordable place to live, noting that the approximated rent payments were between $1,100 and $1,700 per month. (Tr. 10-11.) Zimmerman also testified that "many respected think tanks around the country" predict that by 2030, 95 percent of car traffic will be autonomous and that "car ownership is going to dwindle from 230 some million miles a year down to 44 million miles a year." (Tr. 11.) Zimmerman also noted that COVID-19 caused many people to begin working from home, obviating the need for a vehicle. The Project was referred to as "a building for the future." Zimmerman also noted that the developers secured leases that provided off-site parking for residents.

{¶ 7} Cory Riordan of the Tremont West Development Corporation briefly noted that Zimmerman's ideas about future car ownership are not relevant and that the real issue is the reality of the current parking situation and the numerous Tremont residents and businesses whose lives will be affected by the variance.

{¶ 8} Donald Petit of the Landmarks Commission stated that the Landmarks Commission worked extensively with appellant to find a plan that satisfied all involved parties. He stated that after much planning with appellant, the Landmarks Commission ultimately supported the Project.

{¶ 9} Several Tremont residents voiced their opposition to the Project. Susan Scialabba noted that the area where the parcels are located is already congested and overcrowded and that the neighboring St. Augustine Church where she is a

parishioner already struggles to provide parking for parishioners and community members attending other events there. She further stated that the public transportation in the area is paltry, noting that the bus route runs once an hour and it is on the opposite corner.

{¶ 10} Matt Moss, the neighborhood planner from the Cleveland City Planning Commission relayed that he spoke to the traffic commissioner, Rob Mavic, who noted that while Lincoln Park, a community park located across the street, was consistently full and utilized, Kenilworth Avenue itself was underutilized for parking. Moss ultimately opined that he supported the variance after reviewing the current underutilization of parking spaces in the area.

{¶ 11} At the close of the meeting, Kelley Britt, a member of the BZA, stated that she would like proof of the underutilized parking or proof that appellant executed valid parking leases to secure off-site parking for residents before approving the variance. The BZA ultimately postponed the vote to its next meeting.

{¶ 12} At the second hearing on April 19, 2021, Maison testified again, this time citing the results of a new parking study conducted by Transportation Management Services. He discussed the results of the study, which observed the area on a Thursday, Friday, and Saturday in February 2021 and indicated that each study revealed over 200 available spots in the studied areas. Maison concluded that the study demonstrated that there is not a parking problem contrary to what had been described by the numerous residents opposing the Project.

{¶ 13} Moss testified again with the results of his own parking study. Moss analyzed a "five-minute walk area" around the site and found that on average, over a period of one month, there were 277 street parking spaces on the surrounding streets. He testified that many areas of Kenilworth Avenue and Starkweather Avenue prohibit street parking and noted that this was probably because "the curb most lane and the right most lane on the north side" act as a turning lane for another road, Scranton Road. (Tr. 49.) Moss suggested removing some of the signage prohibiting parking from these underutilized areas. Moss admitted that his data was not perfect, as the counts occurred during the pandemic when there were likely less neighborhood visitors and less employees of local businesses filling the parking spaces. Moss also specifically testified that unlike many of the other multi-family housing projects being constructed in Tremont, this one was unique in that the developers have such a small surface area to work with. Finally, Moss reiterated that the Project was designed to encourage residents to walk, bike, or take public transit and that creating these options may incentivize people to forgo using or owning vehicles.

{¶ 14} Councilman Kerry McCormack also spoke. McCormack stated that he shared the goals of walkability that the developers appear to support but opposes this Project. He noted that he introduced the UF District ordinances in 2017 after extensive consultation with the planning department, the local block club, residents, and community development corporations. He opined that appellant did not provide any evidence that entitled it to a variance from these recently drafted

ordinances and that it is not the function of the BZA to grant a variance unless it is supported by evidence.

{¶ 15} Scialabba again testified, citing the parking difficulties in the area as well as citing the elderly, disabled parishioners of the church who will not be able to walk even five minutes away. She also noted that the parking study submitted by Maison failed to observe the traffic on Sunday, when St. Augustine Church has its busiest services. In response to this, BZA Chairman Carol Johnson also noted that none of the studies looked at parking beyond 6:00 p.m., when many people typically return to their homes for the evening.

{¶ 16} Kate O'Neil, a member of the local block club, shared her own findings regarding cars in the area. She noted that the studies were flawed based on timing and cited the slowed business operations of local businesses due to the COVID-19 pandemic. As an example, she cites area businesses working with severely reduced staff and reduced attendance at church services. She also directed the BZA to a video that she submitted on behalf of the local block club entitled "They Will Have Cars" that demonstrated the already-problematic parking in the area.

{¶ 17} Maison reiterated that appellant is facing hardship due to the size of the parcel and the fact that it can no longer use the rectory space for the Project. He notes that parking leases for 30 spots have been executed but conceded that some of those leased parking spaces may not be available during the day. He defended the parking study, noting that it did not observe anything past 6:00 p.m. because all 30 spaces would be available in the leased spaces at that time.

{¶ 18} Riordan pointed out that before the rectory parcel was removed from the Project plans, the developers proposed only 26 units. He noted that once the parcel size got smaller, the number of units somehow increased and all parking was eliminated.

{¶ 19} After all evidence was received, the BZA voted. Members Johnson, Donovan, Britt, and Barnes all voted to deny the variance, and Member Faith abstained from voting, stating that "people have been trying to manipulate me, so I prefer not to make a vote." (Tr. 94.)

{¶ 20} The BZA issued a resolution memorializing the vote. In the resolution, the BZA describes some of the evidence it considered in denying the variance, stating:

> WHEREAS, at the September 14, 2020 hearing extensive testimony was given by the appellant, neighbors, City Planning, the development corporation and Landmarks Commission[.] Concerns were raised by the neighbors that a large apartment building constructed without adequate parking would negatively affect their quality of life. Many neighbors stated that parking is already a problem in the area as it is a struggle to find on-street parking. It was stated that the impact will be greater on the church directly adjacent to the subject property as the parishioners rely on the on-street parking spaces. The neighbors submitted a video showing the average parking usage/availability over certain time periods during the day and evening. The appellants argued that parking is actually not an issue in the area and that many of their tenants will not have cars. They stated that they have parking agreements with nearby owners;(more than 400 feet away) and that public transportation is readily available. The Tremont West Development Corporation representative expressed opposition to the variance citing the new zoning classification as an Urban Form Overlay District that relieves some of the parking requirements but does not completely eliminate it. The Board requested that the appellant hire an independent party to conduct a Parking Study and the case was postponed[.]

WHEREAS, April 19, 2021 the appellants presented the parking study. Matt Moss, the Neighborhood Planner also presented an impact study. Neighbors argued that the parking study is not accurate as it was taken during a pandemic when public events have been canceled and people are not patronizing the local restaurants and bars. Approximately 25 letters and emails of opposition were submitted. Approximately 4 letters of support were submitted. Councilman McCormack stated that the request is contrary to the purpose and intent of the zoning code; a rezoning was recently made at this site, the purpose of the new zoning designation was to reduce the overall required parking spaces by a percentage not to completely eliminate them[.]

{¶ 21} Appellant appealed the BZA's denial to the Cuyahoga County Court of Common Pleas pursuant to R.C. 2506.01. The trial court affirmed the BZA's denial in a journal entry:

Upon consideration of the transcript and such additional evidence as the court has allowed to be introduced, the court affirms the order of the city of Cleveland board of zoning appeals, finding the order is not unconstitutional, illegal, arbitrary, capricious, unreasonable, nor unsupported by a preponderance of substantial, reliable, and probative evidence on the whole record.

{¶ 22} Appellant appealed, assigning four errors for our review:

1. The Trial Court abused its discretion in finding that the decision of the Cleveland Board of Zoning Appeals ("BZA") to uphold the decision of the Cleveland Planning Commission's ("CPC") denial of Appellant's variance request is not supported by a preponderance of substantial, reliable and probative evidence.

2. The Trial Court abused its discretion in finding that the decision of the BZA to uphold the decision of the CPC's denial of Appellant's variance request was not arbitrary, capricious, and unreasonable.

3. The Trial Court abused its discretion because the Trial Court affirmed a BZA decision that applied the wrong legal standard for an area variance.

4. The Trial Court erred by not holding an evidentiary hearing pursuant to R.C. 2506.03 and allowing Appellant to supplement the record because the BZA's application of Cleveland Codified Ordinance[s] (C.C.O.) 329.03(b) as to Appellant's Property was unconstitutional.

## II. Law and Analysis

{¶ 23} Appellant's first, second, and third assignments of error are all interrelated and pertain to the BZA's decision based on the evidence received. In these assignments of error, appellant argues that the trial court erred in finding that (1) the BZA's denial of the variance is supported by a preponderance of substantial, reliable, and probative evidence; (2) that the BZA's denial of the variance was not arbitrary, capricious, and unreasonable; and (3) the BZA applied the correct legal standard for an area variance.

{¶ 24} We first address the narrow scope of our appellate review. The Ohio Supreme Court has explained that under R.C. Chapter 2506, the role of the common pleas courts and appellate courts differ in reviewing appeals from political subdivisions. *Franklin v. Berea*, 8th Dist. Cuyahoga No. 93894, 2010-Ohio-4350, ¶ 18, citing *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 735 N.E.2d 433 (2000). Common pleas courts are empowered to reverse the BZA's decision "if it finds that the board's decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by a preponderance of reliable, probative and substantial evidence" upon review of the entire record. R.C. 2506.04; *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34, 465 N.E.2d 848 (1984). Appellate review of a common pleas court's decision pursuant to R.C. 2506.04 is limited to "questions of

law." *Henley* at 148; R.C. 2506.04. Questions of law are issues decided by a judge that concern the application or interpretation of the law and a question of law "does not include the same extensive power to weigh 'the preponderance of substantial, reliable, and probative evidence,' as is granted to the common pleas court." *Franklin* at ¶ 20, quoting *Kisil* at 34, fn. 4. Appellate courts are required to "affirm the common pleas court, unless the court of appeals finds, as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence." *Id.*; R.C. 2506.04.

{¶ 25} We also note that a BZA is afforded wide latitude in deciding whether to grant or deny a variance. *Schomaeker v. First Natl. Bank*, 66 Ohio St.2d 304, 309, 421 N.E.2d 530 (1981); *Kisil* at 35. A board's decision to deny a variance is accorded a presumption of validity and the burden of demonstrating the decision's invalidity rests with the contesting party. *Consol. Mgt., Inc. v. Cleveland*, 6 Ohio St.3d 238, 240, 452 N.E.2d 1287 (1983). The fact that the appellate court may arrive at a different conclusion than the administrative agency is immaterial; courts are forbidden from substituting their judgment for that of an administrative agency or trial court absent the approved criteria for doing so. *Franklin* at ¶ 20, citing *Henley* at 147, citing *Lorain City School Dist. Bd. of Edn. v. State Emp. Rels. Bd.*, 40 Ohio St.3d 257, 261, 533 N.E.2d 264 (1988).

{¶ 26} There are two distinct types of zoning variances — use variances and area variances. Use variances are subject to higher scrutiny and require a showing of "unnecessary hardship" while area variances are subject to the lesser standard of

"practical difficulties." *Franklin* at ¶ 27, citing *Duncan v. Middlefield*, 23 Ohio St.3d 83, 85, 491 N.E.2d 692 (1986). Neither party disputes that in the instant matter, appellant sought an area variance.

{¶ 27} C.C.O. 329.03 empowers the BZA to grant or deny variances and provides the analysis that the BZA is required to employ in granting or denying such variances:

(a) Conditions Requiring Variances.

Where there is practical difficulty or unnecessary hardship in the way of carrying out the strict letter of the provisions of this Zoning Code, the Board of Zoning Appeals shall have the power, in a specific case, to vary or modify the application of any such provisions in harmony with the general purpose and intent of this Zoning Code so that public health, safety, morals and general welfare may be safeguarded and substantial justice done.

(b) Limitation of Variance Powers. Such variance shall be limited to specific cases where:

(1) The practical difficulty or unnecessary hardship inheres in and is peculiar to the premises sought to be built upon or used because of physical size, shape or other characteristics of the premises or adjoining premises which differentiate it from other premises in the same district and create a difficulty or hardship caused by a strict application of the provisions of this Zoning Code not generally shared by other land or buildings in the same district;

(2) Refusal of the variance appealed for will deprive the owner of substantial property rights; and

(3) Granting of the variance appealed for will not be contrary to the purpose and intent of the provisions of this Zoning Code.

{¶ 28} This section further instructs that when appealing to the BZA "the appellant shall state and substantiate his or her claim that the three (3) conditions

listed under division (b) of this section exist[.]" C.C.O. 329.03(c). "The BZA must deny appellant's request for a variance if they fail to satisfy even one of [the C.C.O. 329.03(b)] requirements." *On Point Professional Body Art v. Cleveland*, 8th Dist. Cuyahoga No. 87572, 2006-Ohio-5728, ¶ 18, citing *In Re Appeal of Univ. Circle Inc.*, 8th Dist. Cuyahoga No. 36612, 1978 Ohio App. LEXIS 9371, 11 (Jan. 12, 1978). Finally, C.C.O. 329.04(b) notes that

> [t]he Board shall have no power to authorize as a variance the construction or use of any new building which does not fulfil the requirements of the Zoning Code, * * * unless the Board determines that lack of parking space upon the premises of such building will not have a seriously adverse effect upon traffic conditions, or upon the neighborhood.

{¶ 29} Caselaw further instructs that property owners seeking an area variance must establish that without the variance, it would encounter "practical difficulties" such that application of the zoning ordinance to the property is inequitable. *Duncan*, 23 Ohio St.3d at 86, 491 N.E.2d 692. BZAs are instructed to "weigh the competing interests of the property owner and the community, and the property owner would be required to show that the application of an area zoning requirement was inequitable." *CBS Outdoor, Inc. v. Cleveland Bd. of Zoning Appeals*, 8th Dist. Cuyahoga No. 98141, 2013-Ohio-1173, ¶ 16, citing *Duncan* at *id*. The *Duncan* court lists seven factors that should be considered in determining whether a property owner seeking a variance has encountered practical difficulties warranting the variance. These include, but are not limited to

> "(1) whether the property in question will yield a reasonable return or whether there can be any beneficial use of the property without the

variance; (2) whether the variance is substantial; (3) whether the essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer a substantial detriment as a result of the variance; (4) whether the variance would adversely affect the delivery of governmental services (e.g., water, sewer, garbage); (5) whether the property owner purchased the property with knowledge of the zoning restriction; (6) whether the property owner's predicament feasibly can be obviated through some method other than a variance; (7) whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance."

*CBS Outdoor, Inc*. at ¶ 17, quoting *Duncan* at *id*.

{¶ 30} Where a situation exists, as it does here, where the local zoning ordinances requires an analysis that differs from the *Duncan* factors, this court has applied both. *Barry v. Bay Village*, 8th Dist. Cuyahoga No. 104999, 2017-Ohio-7244, ¶ 20, citing *Phillips v. Westlake Bd. of Zoning Appeals*, 8th Dist. Cuyahoga No. 92051, 2009-Ohio-2489, ¶ 54, citing *Stickelman v. Bd. of Zoning Appeals*, 148 Ohio App.3d 190, 2002-Ohio-2785, 772 N.E.2d 683, ¶ 32 (2d Dist.). We further note that "no single [*Duncan*] factor controls in a determination of practical difficulties; the inquiry should focus on the spirit rather than the letter of the zoning ordinance so that substantial justice is done." *Dyke v. Shaker Hts*., 8th Dist. Cuyahoga No. 83010, 2004-Ohio-514, ¶ 30. Thus, a variance may be denied even if some *Duncan* factors weigh in favor of the property owner or are inconclusive. *Stickelman* at ¶ 32; *Duncan* at *id*.

{¶ 31} Appellant first argues that the trial court erred in failing to "weigh the factors under *Duncan* and C.C.O. 329.03(b)." We note that Civ.R. 52 does not require a trial court to issue a detailed opinion in an administrative appeal or any

findings of fact or conclusions of law. *3910 Warrensville Ctr., Inc. v. Warrensville Hts.*, 20 Ohio App.3d 220, 223, 485 N.E.2d 824 (8th Dist.1984). Appellant argues that the trial court could not have considered the C.C.O. 329.03(b) analysis or the *Duncan* factors because the transcript and resolution fail to discuss or analyze each consideration individually. Appellant cites no law requiring such individual consideration, and we note that R.C. 2506.04 allows a reviewing trial court to make its determination based on "evidence on the whole record." Even though the trial court did not issue a detailed opinion or any findings of fact, we note that the entire BZA record was made part of the trial court's record and this matter is well-briefed. As such, we are fully able to review this matter on appeal without a detailed opinion or findings of fact. *Kurutz v. Cleveland*, 8th Dist. Cuyahoga No. 105899, 2018-Ohio-2398, ¶ 4; *McMillan v. Lakewood*, 8th Dist. Cuyahoga No. 105463, 2018-Ohio-94, ¶ 21. We therefore proceed to examine the evidence that appellant proffered to support each factor of C.C.O. 329.03(b) and *Duncan*.

{¶ 32} Under C.C.O. 329.03(b)(1), appellant was required to show that strict adherence to the off-street parking requirement would cause it practical difficulties. Appellant's singular allegation of practical difficulties is that the parcel that it is utilizing is too small to accommodate both the Project and the necessary on-site parking. Appellant argued that strict adherence to the parking requirement would cause practical difficulty because it was forced to reduce the area for the Project "by almost 40 percent to preserve the important rectory building." (Tr. 85.)

{¶ 33} Since *Duncan*, 23 Ohio St.3d 83, 491 N.E.2d 692, contains a framework for evaluating "practical difficulty," we briefly review the evidence submitted by appellant supporting each *Duncan* factor.

{¶ 34} The first *Duncan* factor considers whether the property will yield a reasonable return or whether there is a beneficial use of the property without the variance. Appellant argues that the reasonable return is the building itself, citing the extreme lengths that it went through to benefit the city of Cleveland and the Tremont neighborhood, noting continued adherence to the city's requests and planning, as well as adherence to the goals of the UF District in that the Project would make "a positive environmental and social impact." Appellant's argument does not demonstrate practical difficulty that caused it to ask for the variance in the first place, but rather offers mitigation for the concerns arising from the requested variance. We commend the extensive planning and willingness to work with the neighborhood, but this fact does not demonstrate how complying with the parking mandates of the ordinance would cause practical difficulty. Appellant also has not proffered any evidence suggesting that the Project is the only beneficial use of the property.

{¶ 35} The second *Duncan* factor considers whether the variance is substantial. Appellant argues that the variance is not substantial because it acquired two separate parking leases from neighboring properties that provide additional parking spaces, mitigating any use of the street parking spaces that the residents expressed concern about. Rebuttal evidence provided at the hearing suggests that

these leases offer an imperfect solution because (1) the leases provide spaces that are over 400 feet from the building in derogation of other zoning requirements (and convenience to residents); and (2) the parking spaces may not be available at all during the day. BZA Chairman Johnson specifically noted that in this situation, she would not choose to use the leased spaces if she were carrying groceries to the building and would attempt to find closer parking on the street near the building. Appellant also notes that even without these leases, its parking study and Moss's parking study indicated that street parking was not a problem in the area. The local block club refuted this testimony with their own parking study demonstrating the opposite, and many of the letters of opposition cite existing concerns with parking that the Project, without on-site parking, would likely exacerbate.

{¶ 36} The third *Duncan* factor considers the variance's effect on the essential character of the neighborhood and the effect on adjoining properties. Appellant argues that the Project is actually in line with the substantial character of the neighborhood, citing all of the pedestrian friendly features that align with the goals of the UF District. Appellant suggests that creating a residential building without a parking lot will encourage residents to utilize public transportation, walking, biking, and rideshare. The record reflects, however, that this argument is not rooted in the reality of the neighborhood. While designed to be a pedestrian-friendly area, many of the new residents will undoubtedly have vehicles. The 46 proposed units will result in, at the very least, 46 new residents to the neighborhood who will have vehicles, and so will their roommates, children, partners, and visitors.

These vehicles will need to be parked somewhere. We also note that the record is full of testimony citing the current struggles of the neighboring St. Augustine Church to ensure sufficient parking for parishioners and visitors as well as the testimony of several community members with neighboring properties who also noted an existing problem finding street parking.

{¶ 37} The fourth *Duncan* factor considers whether the variance would affect the delivery of governmental services such as water, sewer, and garbage. Appellant did not argue the fourth *Duncan* factor in its brief, and our own review revealed no evidence in the record suggesting that the variance would impede government services.

{¶ 38} The fifth *Duncan* factor considers whether the property owner purchased the property with the knowledge of the zoning restriction. Appellant also did not argue the fifth *Duncan* factor in its brief. We note generally that the UF District and its zoning requirements were codified in 2017 and that appellant purchased the subject parcels in 2019. Appellant does not attempt to establish that it did not know about the ordinances prior to purchasing the parcels. Appellant only demonstrates that unforeseen roadblocks with the parcels, such as the inability to raze the rectory, forced it to work with a smaller space for the Project.

{¶ 39} The sixth *Duncan* factor considers whether the issue necessitating the variance can be obviated through a method other than a variance. Appellant argues that there are no feasible alternatives because the only alternative is spending "$30,000 per parking spot" which would ultimately cost "$1,170,000" to build the

required parking spots. This argument is premised on the idea that the only use of this parcel is a residential building and that any changes to the proposed structure of the building, *which has not been built yet,* are out of the question. The record reflects that in addition to the parking leases that appellant acquired, appellant also talked with neighboring properties, Grace Hospital and the Ukrainian Museum, about purchasing land for a parking lot or leasing spaces, but it does not appear that these talks ever came to fruition. Further, in denying the variance, the BZA suggested that while the UF District zoning encouraged reduced parking, it did not support eliminating it completely to the detriment of the neighborhood. Indeed, during the April hearing, Khalid Hawthorne of the Tremont West Development Corporation reflected on the history of the Project, noting that "this is attempting to create policy changes through a variance * * * which is not, * * * the [optimal] scenario. Yet, if we actually sat down * * * put all our heads together we could come up with a plan of action to move forward with a development here, but that requires looking at all the parking in this area." (Tr. 80.) Nothing in the record suggests that appellant attempted to propose a variance that contemplated less than 30 spaces, but more than zero spaces.

{¶ 40} The seventh *Duncan* factor considers whether the spirit and intent behind the zoning requirement would be observed and whether the variance provides substantial justice. Appellant again recites that the variance comports with the underlying goals of the UF District. Appellant also argues that substantial justice was not done because the BZA granted the new owners of the church parcel a "no

parking variance" three months after denying the instant variance. We note that this is not properly in the record before us[2] and could not have been considered in the BZA's record due to the fact that it occurred after the BZA held hearings and issued the resolution. We nonetheless fail to see how a variance granted to a neighboring parcel, which is unique and has its own set of practical difficulties based on location, age, usage, and placement, demonstrates that denial of the variance is at odds with substantial justice.

{¶ 41} We further note that the spirit and intent of the zoning ordinance was a major point raised during the hearings, particularly by Councilman McCormack, who noted that typically variances are liberally granted based on outdated zoning ordinances, but that the UF District ordinance was zoned in 2017 using community input. McCormack suggested that absent a showing of practical difficulties and the other factors in C.C.O. 329.03(b), the BZA should not approve the variance due to the consideration that went into the UF District planning. In the BZA's resolution, it specifically found that the spirit and intent of the UF District was to promote less parking spaces, but not eliminate them altogether.

{¶ 42} Turning to the second factor that appellant was required to prove, C.C.O. 329.03(b)(2), appellant was required to demonstrate that without the variance, it would be deprived of substantial property rights. Appellant suggests

---

[2] At the April hearing, Hawthorne alluded to this variance, noting that "[t]hat's going to be coming to you for a variance for parking for an event center which would need * * * a variance of 40 something spaces, but they're going to use valet parking[.]" These limited facts in the record before us already indicate that the nature, usage, and unique needs of the space are different from those of a residential building.

that because it was unable to raze the rectory, it was deprived a substantial property right. We first note that appellant chose, despite the Project size being reduced by 40 percent, to move forward with plans to construct a residential building instead of taking steps to modify the Project or reconsider it altogether. Appellant purchased the three parcels containing the church, rectory, and parking lot, likely with the knowledge that at least the church and rectory were historical buildings, which are often subject to backlash from community members and historical societies who intend to preserve the buildings. We are also cognizant of appellant's argument that the cost of providing parking on the small surface area would be costly. This court has held that economic hardship alone does not rise to the level of substantial deprivation of property rights. *Moulagiannis v. Cleveland Bd. of Zoning Appeals*, 8th Dist. Cuyahoga No. 84922, 2005-Ohio-2180, ¶ 27. This court has also declined to find that substantial property rights are deprived when the hardship is self-inflicted, as the evidence overwhelmingly supports in the case at bar. *On Point Professional Body Art,* 8th Dist. Cuyahoga No. 87572, 2006-Ohio-5728, at ¶ 23. We find that the record contains minimal, if any, evidence that appellant would be denied a substantial property right without the requested variance.

{¶ 43} Turning to the final factor, under C.C.O. 329.03(b)(3), appellant was required to demonstrate that the variance would not be contrary to the purpose and intent of the zoning ordinances. We find that this subsection is similar to the seventh *Duncan* factor and, as discussed herein, appellant failed to demonstrate that the denial of parking would be contrary to the purpose and intent of the zoning

ordinances. We also take special note of C.C.O. 329.04(b) that specifically limits the BZA's power to grant a parking variance to situations where such variance "*will not have a seriously adverse effect upon traffic conditions, or upon the neighborhood.*" As already discussed, the record contains significant evidence demonstrating that a residential building absent provided on-site parking could exacerbate an existing parking problem. Indeed, several members of the neighborhood and community do not necessarily appear opposed to the Project as a whole, but certainly the Project absent any provided on-site parking that they believe would be detrimental to the neighborhood.

{¶ 44} Appellant also asserts that the BZA applied the wrong standard of review in denying the variance request. In support of this, appellant notes that three of the BZA members cited Councilman McCormack's testimony in placing their votes and suggests that these votes were cast exclusively at Councilman McCormack's urging that the variance is not warranted simply because the zoning ordinance is new and represents the current will of the neighborhood. We disagree. As already discussed, it is clear that Councilman McCormack believed that appellant did not meet the evidentiary burden necessary to grant a variance. We further find that the BZA was read the standard that it was to apply at the beginning of each hearing, and nothing indicates that the BZA deviated from this standard in casting their votes. *See also Kurtock v. Cleveland Bd. of Zoning Appeals,* 8th Dist. Cuyahoga No. 100266, 2014-Ohio-1836, ¶ 18 ("As reflected in the transcript of proceedings, the board was aware of the requirements under the ordinance.").

{¶ 45} Applying the factors set forth in C.C.O. 329.03(b) as well as *Duncan*, 23 Ohio St.3d 83, 491 N.E.2d 692, we cannot find that the trial court's decision is not supported by a preponderance of reliable, probative, and substantial evidence. Our limited appellate review does not allow us to weigh the evidence, but we find that reliable, probative, and substantial evidence exists to support the BZA's denial as a matter of law. To the extent that the BZA was more compelled by the arguments of those opposing the variance, we may not substitute our judgment on appeal. *Kisil*, 12 Ohio St.3d at 34, 465 N.E.2d 848. "We can only reverse an administrative appeal based on evidentiary arguments if we conclude there is no evidence in support of the agency's decision." *Vang v. Cleveland*, 8th Dist. Cuyahoga No. 106519, 2018-Ohio-3312, ¶ 14. Such is not the case here. Based on the foregoing, we overrule appellant's first, second, and third assignments of error.

{¶ 46} In its fourth assignment of error, appellant argues that the trial court violated its due process rights by (1) failing to hold an evidentiary hearing, and (2) not allowing appellant to supplement the record on appeal with evidence of the BZA's zoning decision on the church parcel that occurred after the instant matter concluded.

{¶ 47} R.C. 2506.03 governs hearings for appeals taken pursuant to administrative agencies. Under this section, judicial review of an administrative appeal is confined to the transcript unless the administrative agency files a deficient or incomplete transcript. *Koach v. Shaker Hts.*, 2017-Ohio-5748, 94 N.E.3d 987, ¶ 16 (8th Dist.). If it is apparent that the transcript is deficient or incomplete, the

trial court must hold an evidentiary hearing if any one of the enumerated exceptions in R.C. 2506.03 applies. *CBS Outdoor, Inc.*, 8th Dist. Cuyahoga No. 98141, 2013-Ohio-1173, at ¶ 40. Appellant fails to argue that the transcript was deficient or incomplete, and our own review reveals that it was not. A full transcript was filed as well as the full BZA record. We therefore overrule this assignment of error.

{¶ 48} Appellant also argues that the BZA unconstitutionally applied C.C.O. 348.04(d)(4)(A) because it "explicitly based its denial of Appellant's requested area variance on inaccurate and misguided legal analysis of C.C.O. [348.04(d)(4)(A)] resulting in the modifying of legal standards for an area variance." We find no such evidence supporting this, as already discussed herein. The BZA was read the correct legal standard to apply at the beginning of both hearings. We have already determined that the evidence in the record supports the BZA's findings as applied to the correct legal criteria set forth in C.C.O. 329.03(b), as well as the *Duncan* factors. Appellant's argument that the BZA applied a stricter standard based solely on Councilman McCormack's standards is without merit. We also note that appellant fails to cite any laws indicating that this is a constitutional violation. We have examined the available evidence in the record and determined that a preponderance of reliable, probative, and substantial evidence exists to support the BZA's denial of the variance request and the trial court's subsequent affirmation.

{¶ 49} Regarding appellant's argument that its constitutional rights were violated, appellant cites no supporting law or any argument supporting such a contention other than those related to evidence that this court has already evaluated.

If an argument exists to support an assignment of error, it is not this court's duty to root it out or construct a foundation for appellant's claim. *UBS Fin. Servs. v. Lacava*, 2018-Ohio-3276, 118 N.E.3d 1008, ¶ 21 (8th Dist.), citing *In re A.Z.,* 4th Dist. Meigs No. 11CA3, 2011-Ohio-6739, ¶ 18; *Coleman v. Davis*, 4th Dist. Jackson No. 10CA5, 2011-Ohio-506, ¶ 13.

{¶ 50} We therefore overrule appellant's final assignment of error.

### III. Conclusion

{¶ 51} After a thorough review of all of the evidence in the record, we cannot say as a matter of law that the BZA's denial of appellant's variance is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by a preponderance of substantial, reliable, and probative evidence on the whole record. As such, the trial court did not err in coming to the same conclusion. We also overrule appellant's arguments that the UF District zoning ordinances were unconstitutional as applied and that its due process rights were violated, finding no evidence supporting these contentions.

{¶ 52} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK DANIEL CELEBREZZE, III, PRESIDING JUDGE

MARY EILEEN KILBANE, J., and
EILEEN T. GALLAGHER, J., CONCUR